THE TOWNSHIP BOARD OF EDUCATION *et al.*

*v.*

JOHN CAROLAN *et al.*

*Opinion filed October 13, 1899.*

1. SCHOOLS—*township board cannot buy school site without authority of vote of electors.*  A township board of education has no power to purchase a site for a high school without authority given by a vote of the township.  (*Greenwood* v. *Gmelich*, 175 Ill. 526, followed.)

2. SAME—*what action by electors will ratify board's unauthorized purchase of site.*  The unauthorized purchase by a township board of education of the site for a high school is ratified where the electors vote, at an election called for that purpose, to build a school house upon the site so purchased and to issue bonds for that purpose.

3. SAME—*members of board not entitled to special notice of a regular meeting.*  That members of the board of education were not notified of the meeting at which an election was called to vote upon a proposition to build a school house and issue bonds in payment of it, does not invalidate the election, where the meeting was a stated one, provided for by a regular order.

4. SAME—*one polling place is all that statute requires for an election to build township high school.*  But one polling place need be fixed in a high school district for an election to determine whether a new school building shall be constructed and bonds issued in payment.

5. SAME—*when notices of an election are not invalid.*  The notices of an election to determine whether a high school building shall be erected and bonds issued therefor are not invalid because two of the members of the board sign as president and secretary, respectively, instead of as individual school directors.

MAGRUDER, J., dissenting.

*Carolan* v. *Township Board of Education*, 81 Ill. App. 359, reversed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lake county; the Hon. CHARLES H. DONNELLY, Judge, presiding.

BOWEN W. SCHUMACHER, and MONK & ELLIOTT, for appellants.

D. H. PINNEY, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellees, John Carolan and many others, residents and tax-payers of high school township 43, in Lake county, filed their bill in equity in the circuit court of said county to enjoin the board of education of said township from issuing its bonds with which to pay for the erection of a high school building, in pursuance of a vote of the electors of said township. A temporary injunction was granted, but on the hearing the circuit court dissolved the injunction and dismissed the bill for want of equity. On appeal by the complainants to the Appellate Court the decree was reversed and the cause remanded, with directions to enter a decree making the injunction perpetual, as prayed in the bill.

The high school township was organized, in pursuance of a vote of the electors, in 1889, and a board of education was then elected, which board established a high school at Highland Park,—a city containing more than one-half of the population and situated on the shore of Lake Michigan and on the east side of the township,— which school has since been maintained in rented rooms, which have become inadequate and inappropriate for the purpose. The village of Fort Sheridan lies near Highland Park on the north, and the rest of the township consists mostly of farms and is less thickly settled. The township contains about thirty square miles of territory, and the inhabitants of its western part seem to have been opposed to the permanent establishment of the high school, at least at Highland Park. The high school township embraced two political townships,—the western, called West Deerfield, containing eighteen square miles and upwards of two hundred legal voters; the other called East Deerfield, which included Highland Park and Fort Sheridan, and containing upwards of six hundred legal voters. For general elections there were three polling places,—one in West Deerfield and two in East Deerfield. Two members of the board of education were

generally elected from West Deerfield and the other three from East Deerfield, and, for some reason, the two from West Deerfield rarely attended the meetings of the board. In 1896 the board purchased lot 8, in block 35, in Highland Park, for a site for a high school building, for the price of $2750, and from taxes levied and collected for the purpose paid for it, and caused it to be conveyed to the trustees of schools of township 43 for the use of the township high school. This purchase was not authorized by any vote of the electors of the township. In July, 1897, at one of the regular meetings of the board, the three members only from East Deerfield being present, a resolution was adopted calling a special election, to be held August 21, 1897, for the electors to vote upon two propositions submitted, viz., for or against authorizing the board of education to erect a high school building upon said lot 8, and for or against issuing the bonds of the township, to the amount of $30,000, with which to pay for said building. In pursuance of the resolution and notice the election was held at the time specified, from one o'clock to seven o'clock P. M., at the Young Men's Club building in Highland Park, and both propositions were carried by a vote of two hundred and forty for and thirty-five against.

The principal grounds on which it is claimed the injunction should be granted and the issuing of the bonds enjoined are: First, that the board of education had no power to purchase the site for the school house without a vote therefor by the electors of the township, and that therefore the subsequent calling and holding of the election to authorize the board to erect the building on the lot in question and to issue bonds to pay for it were illegal and void acts; and in this connection the position of appellants is controverted, that the vote to erect the building on said lot so purchased was a ratification of the purchase; second, it is contended that the election was not legally called, because the two members from

West Deerfield were not present and had no notice of the meeting; third, it is claimed the election was irregular and void because called and held at only one polling place remote from large numbers of the electors, and that the polls were not open for a sufficient length of time; fourth, that there were not a sufficient number of notices of the election posted; that they were not posted in public places, and did not remain, but disappeared a few days after they were posted, and that they were not properly signed.

As to the first point made, it was decided by this court in *Greenwood* v. *Gmelich*, 175 Ill. 526, that a township board of education has no power to purchase a site for a high school without authority given by a vote of the electors of the township; that their power in such a matter is the same as that of school directors to purchase a site for a district school, who are prohibited by the statute from making such a purchase without a vote of the people at an election called and conducted as required by the statute. Counsel for appellants have endeavored to distinguish that case from this, but we are unable to see any reason why the principle announced in that case is not equally applicable here. The question must be regarded as settled by the case cited.

A more serious question remains, and that is the alleged ratification, by vote of the people cast at the election held August 21, 1897, of the unauthorized purchase by the board of said school house site. The site had been purchased and paid for by the board from the taxes levied and collected for the purpose, and the title had vested, by the conveyance, in the proper authorities. If the people had the authority, as they certainly did have, to authorize the board to purchase the lot, they had the power to ratify the purchase made without authority, after such purchase was made. They were not bound to do so, and could have repudiated the purchase by voting down the proposition to build the house on that site. So, too, they

could ratify it, and we are of the opinion that they did so if the election in question was otherwise valid. It is to be remembered that one of the propositions voted on and carried was to build on this site, particularly describing the lot. It is difficult to see what more the people of the township could have done to ratify the purchase which had already been made with their money, than to vote for and adopt this proposition. There is nothing in the record to show that any other site was, or had been, proposed for submission, and the vote was not illegal or nugatory because confined to that site. It might well be that in many cases only one site would be proposed or desired by any one, and such may have been the case here, so far as the record discloses. Had the site not been previously purchased it would have been competent to submit the propositions to purchase it, to build a school house upon it and to issue the bonds, all at the same election. (*People* v. *Sisson,* 98 Ill. 335.) By the action taken, the effect in this case was substantially the same as if those propositions had been submitted to and adopted by the people at one election. (See *Leighton* v. *Ossipee School District,* 66 N. H. 548; 31 Atl. Rep. 899.) Municipal corporations may ratify the unauthorized contracts of their agents or officers within their corporate powers. *Town of Bruce* v. *Dickey,* 116 Ill. 527.

As to the second point, no notice to the members of the board of the meeting at which the election was called appears to have been necessary. It appears that the meeting was a regular and stated meeting of the board, previously provided for by a regular order.

*Third*—It is strenuously insisted that the election should have been held at the three polling places which had been provided for in the three precincts for the holding of general elections. Section 41 of article 3 of the School law provides: "For the purpose of building a school house, supporting the school and paying other necessary expenses the township shall be regarded as a

school district, and the township board of education shall have the power and discharge the duties of directors for such district in all respects." Section 31 provides that it shall not be lawful for the directors to purchase or locate a school house site without a vote of the people at an election called and conducted as required by section 4 of article 9 of the act. Section 8 of article 5 provides: "Notices of all elections in organized districts shall be given by the directors at least ten days previous to the day of said election. Said notices shall be posted in at least three of the most public places in the district, and shall specify the place where such election is to be held, the time of opening and closing of the polls and the question or questions to be voted on." And section 4 of article 9 provides: "Whenever it is desired to hold an election for the purpose of borrowing money, as provided for in this article of this act, the directors * * * shall give at least ten days' notice of the holding of such election, by posting notices in at least three of the most public places in such district. Such notices shall specify. the place where such election is to be held, the time of opening and closing the polls and the question or proposition to be voted upon," (prescribing a form of notice and indicating but one polling place). ᐧ Other provisions of the statute requiring more than one polling place are not applicable to elections of this character.

We are satisfied that the high school township, for the purpose of the election in question, must be regarded as a school district, and that the statute required only one polling place, which was to be fixed by the board and stated in the notices which were required to be posted up in three of the most public places ten days before the election. The board followed the statute, and their action in doing so cannot be declared illegal. There is no evidence of any intent on their part to prevent publicity or to fix the polling place at a time or place to prevent a full vote from being cast. In fact, it appears that they

caused many unofficial notices to be posted up calling attention to the election and its importance. It also appears that all who appeared at the polls had ample time and opportunity to vote, and no one was deprived of the privilege of voting who desired to exercise it. It may be, and probably is, true that in such a district, greatly larger and more populous than an ordinary school district, provisions should be made for a more general and effective notice to the voters and for more than one polling place; but that is a matter of legislation. It seems that the election was held near the center of population and where it would be convenient to the greater number of the voters, and that the site selected was centrally located to accommodate the greatest number of pupils. The courts cannot relieve against the hardship, if any there be, to those whose homes are remote from such center, where the statute has been followed and no fraud has been shown, and where the election has been fairly called and conducted and the voters desiring to vote have not been deprived of the opportunity to vote.

The point is made that the notice should have been signed by the several members of the board according to the statutory form provided for signing by individual directors, instead of being signed by the corporation, by its president and secretary. We think the point unimportant. There was a substantial compliance with the statute in the respect mentioned, and the section of the statute referred to requires nothing more.

We cannot find, from the evidence, as it is contended we should, that the notices were not sufficiently posted, or not posted in public places.

The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.

*Judgment reversed.*

Mr. JUSTICE MAGRUDER, dissenting.