WILLIAM A. GRAY, Appellant, vs. THE BOARD OF SCHOOL
INSPECTORS OF PEORIA et al. Appellees.

*Opinion filed December 17, 1907.*

1. SCHOOLS—*provisions of special charters relating to levying
school taxes not repealed by general School law.* In view of the
express provision of section 7 of article 16 of the general School
law, as amended in 1891, the provisions of special charters with
respect to the levying and collecting of school taxes were not re-
pealed by section 1 of article 8 of such law, except to the extent
specified in said section 7.

2. SAME—*who are proper authorities to issue tax anticipation
warrants.* Under section 2 of the act relating to tax anticipation
warrants, as amended in 1901, (Laws of 1901, p. 321,) those mu-
nicipal authorities, whether school authorities or otherwise, who
have charge of receiving and paying out the funds of the corpora-
tion, have power to issue and dispose of the tax anticipation war-
rants provided for in such act.

3. SAME—*board of school inspectors of Peoria has power to is-
sue tax anticipation warrants.* The board of school inspectors of
the city of Peoria has power to issue and dispose of the warrants
provided for in section 2 of the act of 1901, (Laws of 1901, p. 321,)
which may be drawn against school taxes already levied in order
to provide for the ordinary and necessary expenses of its schools.

4. SAME—*tax for building purposes cannot be anticipated by
warrants.* It is the tax for general school purposes, only, and not
the tax for building purposes, which may be anticipated by the
drawing of warrants under section 2 of the act of 1901. (Laws of
1901, p. 321.)

5. SAME—*imperfect execution of tax anticipation warrants may
be cured by ratification.* Imperfect execution of tax anticipation
warrants, which consists of the failure of the resolution authoriz-
ing their issue to specify that the tax to be anticipated was the
general school tax, and the failure of the warrants to state that
fact upon their face, except that they were drawn upon the school
treasurer "in anticipation of the taxes of 1905," may be cured by
ratification at a meeting of the board which authorized, and had
power to authorize, the issuing of the warrants.

6. INJUNCTION—*informalities in issuing tax anticipation war-
rants not ground for enjoining payment.* Irregularities and infor-
malities in the manner in which the proper school authorities issued
warrants in anticipation of the school tax do not justify a court of
equity in enjoining the payment of such warrants.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. L. D. PUTERBAUGH, Judge, presiding.

Appellant, July 20, 1906, filed a bill in equity against the appellee board and its president, secretary, treasurer and finance committee, joining also as defendants the Charter Oak National Bank of Hartford and the Ætna Life Insurance Company of the same place, to enjoin the payment and collection of three orders, of $25,000 each, issued by said board. The bill was thereafter amended, and a demurrer thereto was sustained and the bill dismissed for want of equity. On appeal the Appellate Court sustained the decree, and the case was thereupon brought here for review.

The city of Peoria, in this State, was organized under a special charter in the year 1869. (Private Laws of 1869, p. 113.) By said act the board of school inspectors of the city of Peoria was created a "body politic and corporate" with "perpetual existence," by which name it shall "sue and be sued," and "may purchase, receive and hold real, personal and mixed estate, and may sell, lease and dispose of the same." (Private Laws of 1869, p. 168.) It also possessed the power to furnish schools with fixtures, furniture and apparatus; to establish and maintain schools of different grades and determine the rate of taxation for school purposes; to fix the compensation of teachers; to establish necessary rules; to divide the city into school districts, and generally to have and possess all the rights, powers and authority necessary for the proper management of the schools and the "fund belonging to the city for school purposes," and to make all necessary rules and ordinances to carry its powers and duties into effect. Section 12 of chapter 13 of that act reads: "On or before the first Tuesday in August of each year the board of inspectors shall determine the amount of money which, in their opinion, will be

required to be raised by taxation for the support of the public schools of the city the ensuing year, and notify the city council of the rate of tax to be levied and collected for that purpose, as provided by the second clause of chapter 7 of this act, not exceeding the percentage authorized by said clause, and the amount so reported to the city council shall be levied and collected in the same manner and at the same time as other city taxes, and when collected shall be paid over to the treasurer of the board." (Private Laws of 1869, p. 172.) By the second paragraph of section 1 of chapter 7 of said act the city council of Peoria is given the power "to annually levy and collect a tax, not exceeding six mills on the dollar, on all taxable real and personal estate in township eight (8), north, range eight (8), east, in Peoria county, made taxable by the laws of this State, to meet the expense of repairing school houses and supporting and maintaining schools." (Private Laws of 1869, p. 149.)

Section 2 of chapter 146a (Hurd's Stat. 1905, p. 2047,) was amended in 1901, so that the first portion thereof now reads: "That whenever there is not sufficient money in the treasury of any county, city, town, village, school district or other municipal corporation to meet and defray the ordinary and necessary expenses thereof, it shall be lawful for the proper authorities thereof to provide a fund to meet said expenses by issuing and disposing of warrants drawn against and in anticipation of any taxes already levied by said authorities for the payment of the ordinary and necessary expenses of such county, city, town, village, school district or other municipal corporation, to the extent of seventy-five percentum of the total amount of any such tax levied."

The bill avers that it appears from the records of a meeting held on September 4, 1905, the following proceedings were had: "Inspector Bailey, chairman of committee of finance, reports all time obligations of the board paid and

231—5

the board for the first time in seven years wholly free from debt. He said it would be necessary to borrow money in anticipation of the taxes levied for 1905 in order to meet the current expenses of the board, and offered a resolution authorizing the committee to borrow such sums as are necessary, the sums to be re-paid on or before August 1, 1906. Inspector Keene moved the adoption of the resolution, and on call of ayes and nays it was unanimously adopted." The bill further avers that without any other or further authority the finance committee on November 11, 1905, borrowed for said board from said Charter Oak National Bank $25,000, which sum was paid over to the treasurer of the board and expended by the board, and without any further proceedings an order was issued to said bank reading substantially as follows:

"No. 376.      PEORIA BOARD OF SCHOOL INSPECTORS      $25,000
                INTEREST BEARING SCRIP.

"Issued in anticipation of taxes of 1905. Dated November 11, 1905. Authorized at regular meeting of board September 4, 1905.

"On or before September 1, 1906, the treasurer of said board will pay to the order of the Charter Oak National Bank of Hartford, Conn., with interest from date at 4½ per cent per annum, payable semi-annually.

B. MEALS, *President,*
I. N. MARTIN, *Secretary,*
O. J. BAILEY, *Chairman Finance Com."*

The bill contained similar averments of the loan of $25,-000 from the Ætna Life Insurance Company December 15, 1905, under and by the same authority, and the receipt of the money and its expenditure by the board, and the issuing of a like order of that date payable to said insurance company; also similar allegations in regard to another loan of $25,000 from said insurance company on January 20, 1906, and the receipt of that sum by the treasurer and its expenditure by the board after the issuance of a like order by said board. The bill further alleged that on June 4, 1906, said board adopted by a unanimous vote, on the call of the yeas and nays, the following resolution:

"Whereas, according to the books of the school board the present indebtedness of said board appears to be as follows:

| | |
|---|---:|
| Aug. 1, 1904, Savings Bank of Peoria, 5%............ | $10,000.00 |
| Sept. 8, 1905, T. A. Sullivan, 4%.................... | 40,000.00 |
| Nov. 11, 1905, Charter Oak Bank, Hartford, 4½%... | 25,000.00 |
| Dec. 1, 1905, Ætna Life Insurance Co., 4½%...... | 25,000.00 |
| Jan. 20, 1906, Ætna Life Insurance Co., 4½%...... | 25,000.00 |
| Mar. 6, 1906, Central National Bank, 5%........... | 6,000.00 |
| | $131,000.00 |
| Interest to June 1, 1906.............................. | 2,990.96 |
| Interest to July 1, 1906.............................. | 248.25 |
| | $134,472.21 |

"*Therefore be it resolved,* That the president and secretary of the board be and they are hereby authorized to pay said notes on or before July 1, 1906, when properly approved for the payment by the finance committee.

D. M. MAYER,
*Chairman of the Finance Committee.*"

The bill further alleged that said sums of $40,000 and $6000 have been paid by the school board pursuant to said resolution, but contains no averment as to the sum of $10,-000 mentioned therein. It further alleged that said three items, of $25,000 each, represent the money borrowed in pursuance of the resolution of September 4, 1905, and are the same sums for which said three orders were issued; that in pursuance of said resolution the finance committee is about to approve said three sums, of $25,000 each, for payment, and an order is about to be signed by the president and secretary of the board directing the treasurer to pay said sums, and that same will be paid by the treasurer, to the great detriment of the tax-payers. The bill seeks to enjoin the board from taking any further steps towards the payment of said moneys, the president and secretary from signing any orders therefor, the finance committee from approving the same and the treasurer from paying them, and asks that the orders be declared illegal and void and be canceled, and that the bank and insurance company be enjoined from bringing suit for the recovery of said moneys.

RICHARD H. RADLEY, for appellant.

H. C. FULLER, for appellee Board of School Inspectors.

OLIVER J. BAILEY, and STEVENS & HORTON, for other appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

The controlling question in this case is the right of the board of school inspectors of the city of Peoria to issue and dispose of warrants, under said section 2 of chapter 146*a*, drawn against and in anticipation of taxes already levied for the payment of the ordinary and necessary expenses of the schools under the management and control of said board. The amendment of said act in 1901 greatly enlarged the power of municipal corporations, including school corporations. As it now stands, if there is not sufficient money in the treasury of the corporation to defray the ordinary and necessary expenses, a fund may be provided to meet such expenses by issuing and disposing of warrants drawn against and in anticipation of taxes already levied, to the extent of seventy-five per cent of the tax so levied; but it requires the warrants to show that they are payable solely from said taxes when collected, and that the taxes against which the warrants are drawn be set apart for their payment. Certain school authorities are by that amendment authorized to obtain a fund by issuing and disposing of warrants.

It is insisted, however, that under the provisions of the Peoria charter it is the city council, and not the school board, which levies the tax, and that therefore said appellee board is not one of the school authorities authorized by this law to issue and dispose of warrants. The laws of this State provide various methods of levying and collecting taxes for the maintenance of the public schools. The directors of the districts established under the Public School

act of the State levy the tax for such districts. (Hurd's Stat. 1905, chap. 122, sec. 26, par. 3, p. 1811.) Under that act boards of education in districts of not less than one thousand and not over one hundred thousand inhabitants also have the power to levy such taxes. (Hurd's Stat. 1905, chap. 122, sec. 10, par. 6, p. 1815.) In cities of over one hundred thousand the board of education certifies to the city council the amount required for the establishment and support of schools, and then it is the duty of the city council to cause the same to be levied and collected in the same manner as the law provides for the levying and collecting of taxes for school purposes. (*Koelling* v. *People,* 196 Ill. 353.) There are many cities in the State, as will be noted from the citation of authorities herein, that are under special charters, and these have various ways of levying and collecting taxes.

Appellant argues that section 1 of article 8, chapter 122, (Hurd's Stat. 1905, par. 202, p. 1823,) has repealed the provisions of the special charter of the city of Peoria as to levying and collecting taxes, and that said section now controls in every particular. That this contention cannot be upheld is very clear from the following decisions: *School Trustees* v. *School Inspectors,* 214 Ill. 30; *People* v. *Mayor,* 130 id. 406; *Schmohl* v. *Williams,* 215 id. 63; *People* v. *Mottinger,* id. 256; *People* v. *Welsh,* 225 id. 364. Section 7 of article 16, chapter 122, (Hurd's Stat. 1905, p. 1839,) shows clearly, also, that the special charters governing the various school laws are not repealed by the general act, and this section, as amended in 1891, stands with the same force and effect on this point as it did when originally enacted. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Randle,* 183 Ill. 364.) Under some of these laws the city holds the title to the property and the city treasurer collects and pays out the money for school purposes, usually on the order of the mayor and city clerk or comptroller. In the ordinary school district the money is collected by

the township treasurer and is paid out on the order of the board of directors. Under the special charter of the city of Joliet that city belonged to the first class just mentioned, (*People* v. *Mottinger, supra,*) but since that decision was rendered the law originally applying thereto has been amended, so that the board of school inspectors of that city has the authority to levy the tax for school purposes. (Section 3 of law of May 25, 1907; Laws of 1907, p. 526.)

By the special charter of the city of Peoria the board of school inspectors appoints a treasurer, who is to receive all moneys under the control of said board and keep a true and accurate account of the same, paying out such money only upon the order of said board. (Private Laws of 1869, pp. 169, 170.) The said board determines the amount of money required to be raised by taxation for the support of the schools, notifies the city council of such amount and the rate to be levied, and the city council is then required to levy and collect such amount with other city taxes. No discretion is given to the city council as to the amount to be levied,—when it is fixed by the school board the council must levy that sum. Unless the word "levy" is given a very narrow meaning, then under said section 2 of said chapter 146a said appellee board is a school authority authorized to issue the warrants in question. As applied to taxation this word is given a variety of meanings, among others the following: "To impose or assess;" "to impose, assess and collect under the authority of law;" "to raise or collect by assessment;" "to charge a sum of money already ascertained against a person or property subject to the charge;" "to determine by vote the amount of tax to be raised;" "to fix the rate at which property is to be taxed." (25 Cyc. p. 207, and authorities there cited.) Under some of these definitions, obviously the appellee board is the authority which "levies" the tax for school purposes. Under the city charter this board possesses practically all the powers that any school board of a city or

country district possesses. True, it certifies the rate to the city council, and the charter says that body must levy; but the ordinary school district returns its levy to the township treasurer and he gives it to the county clerk. The board of education of the city of Peoria has the power to purchase and hold title to all real estate, (Private Laws of 1869, p. 168,) while under its special charter the city of Joliet, when the decision in *People* v. *Mottinger* was rendered, held title to all the property, and the money was paid to the city treasurer and paid out by him on the order of the mayor and city clerk. We said in that case (p. 261): "If the fund was not, as theretofore, to be raised upon a tax levy made by the city council and to be held by the city treasurer, why should it have been provided by the legislature that warrants drawn upon the school fund should be countersigned by the mayor and city clerk? If the school funds in such school districts, when collected, were to be paid to the township school treasurer, it would be a useless safeguard to provide that when warrants were drawn against said funds they should be signed by officers of the city who have no knowledge of the condition of the school fund or connection with the officer who holds the same. If, however, the tax levy was to be made by the city council and the funds were to be held by the city treasurer when collected, the mayor and city clerk might properly be required to countersign the warrants before they should be paid by the city treasurer out of the funds under his control held for school purposes."

Under the special charter now being considered all moneys collected are paid over to the treasurer of said board and are paid out by him only on the order of the board. Under the reasoning of *People* v. *Mottinger, supra,* said board of inspectors, under the Peoria charter, possesses practically all the powers that are laid down in that decision in order to furnish the necessary authority to levy school taxes. As was said in the opinion of the Appellate

Court: "If this school board cannot issue the warrants provided by said amended section 2 of said chapter 146a of the statutes because it does not directly, but only indirectly, levy the school tax, then this particular school corporation is excluded from the benefits of said amended section." We agree with the Appellate Court in their conclusion that the legislature did not intend such a distinction. Speaking broadly, the legislature intended, when it enacted section 2 of chapter 146a as it now stands, that the proper authorities of all counties, cities, towns and villages and school districts, or other municipal corporations, might meet and defray their ordinary and necessary expenses by issuing and disposing of the class of warrants here in question. In order to have this law practical and efficient, the municipal authorities, whether school or otherwise, that have the power to issue and dispose of these warrants must be those authorities having charge of receiving and paying out the funds of the corporation, otherwise it would be difficult, if not impracticable, to have such knowledge of the condition of the funds as to decide wisely when it was necessary to issue the warrants. The word "levied," as used in this law in the provision requiring such warrants to be "issued in anticipation of any taxes already levied by said authorities," must be given a reasonable meaning, and while it might be possible to construe this special charter to hold that the city council was the authority that levied the school taxes in question, yet we feel that it is within the spirit of the act in question and without violence to its letter to hold, as we do, that this board of school inspectors is one of the school corporations authorized by said section 2 of chapter 146a to issue and dispose of warrants against a tax already levied, in order to provide for the ordinary and necessary expenses of its schools.

Appellant further contends that even though the board of school inspectors is authorized, under the statute, to issue warrants in anticipation of taxes, these warrants here

in question must be held void because they were not in compliance with the statute, in that they do not state directly, upon their face, that they are to be paid solely from the proper tax when collected. The resolution authorizing the issue of these warrants does not state whether they are to be paid out of the taxes authorized for the purpose of establishing and supporting schools or a like tax for school building purposes. It is the former fund, only, which can be anticipated and against which such warrants can be drawn for the ordinary and necessary expenses. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *People,* 208 Ill. 9.) It also appears that the resolution delegated to the finance committee the power to determine the amount of money to be raised by the sale of warrants. Without question *it was the intention of the legislature,* as well as in accordance with sound public policy, that before issuing these warrants the authority should be expressly granted by the entire board, and the particular tax to be anticipated should be definitely fixed and determined by the official action of the board. A broad distinction exists, however, between an irregular or informal exercise of the power and the doing of an act beyond or in excess of the legal powers of the corporation. A defective execution of a power will not render the action of a corporation void, if such action is within the scope of its lawful.powers. The board's action was an attempt in good faith to exercise a power conferred upon it by law, and even though the warrants were defectively issued and executed, they were ratified by a unanimous vote at a regular meeting of the board long after they were issued, June 4, 1906. Such ratification, under the circumstances presented in this record, validated their previous imperfect execution. (*Board of Education* v. *Carolan,* 182 Ill. 119; *Town of Bruce* v. *Dickey,* 116 id. 527; *Connett* v. *City of Chicago,* 114 id. 233.) In *County of Coles* v. *Goehring,* 209 Ill. 142, we said (p. 162) : "They [meaning such warrants] can only be drawn and issued against and in

anticipation of the collection of the taxes already levied and must so show upon their face." These warrants say that they were issued in "anticipation of taxes of 1905." The language implies that the treasurer of the school fund shall pay them from the tax of 1905, and that, fairly construed, means the school tax only. In the *Goehring case, supra,* the warrants recited that they were to be paid out of the county treasury, out of moneys not otherwise appropriated, while these warrants say, in anticipation of the taxes of 1905. The word "anticipation" is defined in Anderson's Law Dictionary as "used in the present for what is to accrue; dealing with income before it is due." We conclude that these warrants were not wholly void, but a defective execution of the power granted said school board under the act in question.

Irregularities and informalities in levies by school authorities cannot be questioned by bill in equity. (*Schmohl v. Williams, supra.*) If officers authorized to make the assessment make it, then mere irregularities in the proceedings under which it was made cannot give a court of chancery jurisdiction to restrain its collection. (*Reynolds v. Drainage District,* 134 Ill. 268.) One who asks a court of equity to restrain the collection of taxes must state facts which bring his case under some acknowledged head of equity jurisprudence. Its extraordinary power will be exercised very sparingly when important public interests are involved. (*Peirce v. Carlock,* 224 Ill. 608; *Martin v. Barnett,* 188 id. 288.) The reasoning in these cases just cited applies with much force here. The school board had the authority to issue these warrants and to sell them for cash. That means practically the borrowing of money to meet the ordinary and necessary expenses of the schools. It is not contended that the tax has not been levied, or that the school board, by the sale of these warrants, exceeded the seventy-five per cent of such tax levy. We must presume from the pleadings that the tax has been collected and was

in the hands of the school treasurer, and that the board intended to pay the orders out of said tax. The moneys obtained by the sale of these warrants have been expended by the school board for the ordinary and necessary expense of maintaining the schools of that city. It would not be in accord with equitable principles to enjoin the school board from paying back, out of these taxes, the moneys so obtained in anticipation of their collection.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*