**PAGE et al. v. HARLINGEN INDEPENDENT SCHOOL DIST. (No. 8280.)**

Court of Civil Appeals of Texas. San Antonio. Dec. 4, 1929.

Rehearing Denied Jan. 22, 1930.

Seabury, George & Taylor, of Brownsville, for appellants.

Rabel & Fristoe, of Harlingen, and Davenport, West & Ransome, of Brownsville, for appellee.

COBBS, J. Appellants sued appellee for damages growing out of the breach of a contract, under the terms of which appellants allege they were employed by appellee, as architects, to prepare plans and specifications for, and to superintend the proper construction of, three buildings, one known as the high school building, one as the north side school building, and the other as the south side school building.

Harlingen independent school district, contemplating a school building program, ordered an election to be held in the district for the purpose of determining whether or not bonds of said district could be issued for the purpose of raising funds with which to construct the three school buildings aforesaid. The election resulted in favor of the issuance of the school bonds in a sufficient amount to erect said buildings. Said election authorized the district to issue $400,000 worth of bonds, and soon thereafter they were issued and sold by the district. Prior to the election, the appellee entered into an agreement with appellants employing them as architects to prepare the plans and specifications, and superintend the proper construction, of said buildings at an agreed price of 5 per cent. of the cost of said buildings, in the event the election carried and the money was available for that building program. After the bonds were issued and sold, appellants were instructed to prepare the plans and specifications for the north and south side school buildings, which they did, and then began the preparation of the plans and specifications for the high school building.

As the north and south side school buildings were constructed in accordance with ap-

pellants' plans and specifications, and the fees therefore were paid by appellee, with the exception of four hundred and some odd dollars, we will not refer further to these two buildings. At the time the contract was entered into between appellants and appellee, it was stated that the board might not undertake the building of the high school building for another year.

Appellants alleged that, just before the completion of the plans and specifications for the high school building, for the construction of which $225,000 of said bonds had been reserved, and just before these bonds were sold, the district wrongfully and unlawfully repudiated its contract with appellants, and would not allow them to proceed further with the work, though appellants insisted upon their right to complete the same under their contract. And appellants alleged that they had spent approximately $2,500 in the preparation of said plans and specifications for the high school building. Appellants then pleaded what it would cost them to complete the plans and specifications for said building, and sued for the difference between what had been paid them on their contract and what it would cost them to carry to completion their contract, and asked for a judgment for this difference in the sum of $8,231.64. Appellants pleaded estoppel, and in the alternative pleaded that the reasonable value of their services for which they had not been paid was the sum of $8,231.64.

Appellee admitted the making of the contract, but denied that it included the high school building, and tendered $426.24, as being the balance due under the contract. And appellee defended against the legality of the contract upon the ground that it was void because the district had no money available on October 10, 1927, with which it could pay said appellants for their services under the terms of their contract, and that by reason thereof the contract was unenforceable.

The case was tried by the court without a jury, and the court rendered judgment for the sum of $426.24, in favor of appellants, and in addition thereto $2,000, being the amount appellants spent in the preparation of the plans and specifications for the high school building.

Obviously, there was but one contract entered into between the district and appellants, for drawing the plans and specifications for, and superintending the construction of, said three school buildings, and, if it was valid as to the north side building and the south side building, why was it not valid as to the third, the high school building?

The questions for us to decide, as presented by both parties, are whether appellants' alleged contract became a binding obligation, and whether appellants are entitled to recover as their damages the difference between the contract price, less what appellee district has paid them, and less the sum it would cost appellants to carry out the contract. However, if the contract be held to be invalid, then the judgment of the trial court for $2,426.24 is a correct recovery upon the quantum meruit.

Contracts for the construction of school buildings from bond sales by an independent school district can only be made after the bonds have been sold and the money placed in the treasury. We here copy the statement made by appellants:

"Appellants alleged the passage of an order on October 10, 1927, by said Appellee District's Board of Trustees, in which they designated Appellants as their architects, and that the same was passed in pursuance of a proposition made by Appellants to Appellee District that in the event said bond election carried and the bonds were issued and sold and the money became available, that on the happening of this contingency, the agreement was to become a binding contract between the parties, under the terms of which Appellants were to perform the services of preparing plans and specifications, and superintend the construction of the High School Building and the two ward school buildings known as the North and the South Side School Buildings; that after said money became available from the sale of said bonds, the plans and specifications for the two ward school buildings were prepared by Appellants, and said buildings were constructed under the supervision of Appellants; that while this work was going on, what is known as the Mexican School Building, and also, what is known as the Combes School Building were brought into the project under the same terms, and that specifications and plans were prepared for these buildings, and they were constructed under the supervision of Appellants, and from time to time as the plans and specifications were being prepared and submitted for the buildings that were actually constructed, the plans and specifications and sketches of the High School Building were being prepared, and different sketches and floor plans were submitted by Appellants to the Defendant District, changes were made in the different plans at Appellee District's suggestion, as to said floor plans and sketches of said High School Building, and in this and many other ways specifically alleged, the conditional contract has been ratified and confirmed by the Appellee District, acting by its Board of Trustees, and that Appellants had been at a reasonable expense of $2,500.00 in the preparation of the plans and sketches for the High School Building before they were unlawfully discharged. According to said plans and specifications of said High School Building, said building cost approximately $225,000.00. Appellants then alleged the cost of completing their plans and specifications for said High School Building to be the sum of $2,225.00, and that the cost

to Appellants of supervising the construction of said building would be the further sum of $2,100.00, and that the Appellee District had paid to Appellants the sum of $5,403.08, and that the difference between the contract price, and what Appellants had received, and what it would cost them to perform their contract, was the sum of $8,231.64. In the alternative, Appellants pleaded the re-adoption of their allegations in their pleading, as contained in the first ten paragraphs, and then that the reasonable value of the services rendered by them to the Appellee District, less what they had been paid, was the sum of $8,231.64, and that in the event for any reason they were unable to recover on their contract then that they have and recover upon the quantum meruit."

The bond election carried, bonds were issued and sold, and the money was placed in the treasury. The school trustees repeatedly referred to this contract went over it, and made changes and alterations therein. There really was but one contract, and it was all made at one and the same time, and, if one part was accepted and acted upon by the building of two of the houses, and postponing the high school building to a later date, yet it was an entire contract, and the effect of the court's ruling, since it found judgment for appellants on the quantum meruit for a less sum, being for $2,000.

■ However, not desiring to discuss the testimony at any length, we think the facts establish a valid contract for all the work done by appellants, and that the act of the school board in setting aside appellants' contract and giving it to another violated the contractual relation existing between the appellants and appellee.

As was said in the case of City of Houston v. Glover, 40 Tex. Civ. App. 177, 89 S. W. 425, 427: The school board, as it had the right to do, employed appellant to prepare plans and specifications for the high school building; there was a change, and the new administration decided not to use the plans and specifications the architect prepared, and urged there, as here, that the contract was void, as violating the constitutional provision creating an indebtedness against the city without making provision for its payment, as required by sections 5 and 7 of article 11 of the Constitution of Texas. In passing upon the architect's contract, the court said:

"The fees paid the architect for the preparation of plans and specifications may properly be regarded as a part of the general expense of constructing the building; but the contract for the payment of such fees may, as in this case, be entirely distinct from the contract for the erection of the building, and its validity in no way depends upon the validity of the building contract. We think both the pleading of plaintiff and the undisputed evidence show that it was the intention of the parties that plaintiff should be paid * * * out of the current revenues of the city. * * * as * * * before stated, the contract for the plans and specifications was separate and distinct from any contract that might thereafter be made for the construction of a market house, and its validity is not affected by the fact that the cost of the proposed building was in excess of $100,000 and that no election was held as required by the city charter to determine whether or not bonds should be issued to provide means for the construction of said market house. * * * The fact that the city afterwards decided not to use said plans in no way lessens its obligation to pay appellee therefor in accordance with its contract and agreement."

In the case of City of Houston v. Potter, 41 Tex. Civ. App. 381, 91 S. W. 389, 393, on the same question, the court said:

"The overruling of the general demurrer is assigned as error, and thereunder the proposition is urged that the petition should have shown that the payment of appellee's compensation had been provided for, as required by sections 5, 7, art. 11 of the Constitution. The petition sets out the contract in full, and it is sufficiently shown that appellee was to be paid out of the proceeds of the sale of bonds issued by authority of the bond election hereinbefore referred to. The objection to the petition on this ground cannot be sustained."

But, as probably more to the point, see Board of Trustees of Alpine Independent School District v. Jacob (Tex. Civ. App.) 170 S. W. 795, 796. This decision merits careful reading, because it is able and by this court. As the plans were necessary in building schoolhouses, they could be paid for out of the money arising from the sale of the bonds, but, if there was none, the claim for the amount due would be a charge upon it, and appellants could compel payment of it.

■ In the Jacob Case, supra, a distinction was made as to the law applicable to contracts between a school district and an architect and the law applicable to a contract between a school district and contractor involving the construction of a school building or the purchase of sites therefor; and it was held that as to the contracts for the payment of accounts legally contracted in buying, building, equipping, or repairing schoolhouses for the district, or in the purchase of sites therefor, they must be made after the money is available from the sale of the bonds; but as to the architect: "There can be no doubt that the amount due for plans and specifications could be paid." This is the rule laid down in Bone v. Black (Tex. Civ. App.) 174 S. W. 971, 972, and followed.

■ There is much testimony showing ratification of the contract by the parties, and

directly in point with the question here we cite the case of Gillespie v. Common School District, 56 N. D. 194, 216 N. W. 564. This case should be carefully read. 35 Cyc. p. 962, and authorities cited in footnotes 96 and 97; Dell Special School District v. Johnson, 129 Ark. 211, 195 S. W. 373; Township Board of Education v. Carolan, 182 Ill. 119, 55 N. E. 58.

We think the course pursued by the school board up to the time they discharged appellants was at all times consistent with the fact that they recognized the contract as existing and inconsistent with the idea that there was no contract.

■ On account of the breach of the contract by appellee under the circumstances, appellants are entitled to recover damages; the contract price less what appellee district has paid them, and less the amount it would cost appellants to carry out their contract. Gould v. McCormick, 75 Wash. 61, 134 P. 676, 47 L. R. A. (N. S.) 765, Ann. Cas. 1915A, 710; Jacobberger v. School District, 122 Or. 124, 256 P. 652; Phelps v. Connellee (Tex. Com. App.) 285 S. W. 1047; Id. (Civ. App.) 278 S. W. 939.

In the Jacobberger and Gould Cases, supra, the rule stated is: "The damages for wrongfully discharging an architect who had undertaken to draw plans for and superintend the construction of a building for a percentage of its cost are the difference between the contract price and what it would have cost them to complete their undertaking at the time of their discharge." On motion for a rehearing in the Phelps v. Connellee Case, supra, the appeals court modified this holding to the extent that a further deduction of whatever amount the architect may have saved himself by finding other employment should be made from the recovery. But the Supreme Court reversed the Court of Civil Appeals' opinion as rendered on rehearing, and held that an architect wrongfully discharged is entitled to recover his contract price, less whatever payments have been made, and what it would cost him to perform his contract; and that such further mitigation of damages was a matter of defense to be pleaded by the defendant.

Appellants claim that there is a controversy raised as to the Combes school building as to whether or not appellants were to have 5 per cent. of the cost of that building, or 3½ per cent. and that the $462.24 tendered in the pleading represents 3½ per cent.; and therefore appellants ask this court to reverse and render this case for the sum prayed for in their petition, less 1½, per cent. of the cost of the Combes school building as shown by the record, which is $8,033.52, for which judgment is sought.

■ On the question of quantum meruit, we are cited to the now well-known case of Slud-

er v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841, which we are compelled to follow. It was held therein that, where a municipal corporation receives the benefit of a contract that is illegal, it will be held liable for the reasonable value of the benefits which it may receive, even in the face of a statute which expressly prohibits such liability, and a recovery to this extent is permitted against such municipal corporations, not on the contract, but on an implied contract for the reasonable value of the services rendered.

Appellants have shown a legal right to recover the sum of $8,033.52, therefore the judgment of the trial court is reversed, and judgment here rendered for appellants for the said sum of $8,033.52.

Reversed and rendered.