CITY OF HOUSTON v. ALEXANDER POTTER.

Decided January 19, 1906.

**1.—Creation of Debt by City—Article 11, Sections 5 and 7 of the Constitution Construed.**

On July 11, 1899, an election was held by the people of the city of Houston to determine whether or not bonds should be issued by said city for the construction of a sewerage system, and resulted in favor of the issuance of the bonds. On September 7, 1899, the city entered into a contract with the plaintiff for the supervision by him of the construction of said sewerage system. The legality of said election was afterwards questioned, and another election ordered, for the same purpose, and held on November 9, 1899, which also resulted in favor of the issuance of the bonds. On January 29, 1900, the city council entered an order on their minutes reciting that the contract had been entered into with plaintiff, that the date of the election had been changed to November 9, 1899, and authorized the mayor to change said contract so as to state the latter date, which was accordingly done on February 3, 1900. The bonds were issued under the last election, and $100,000 of the proceeds of their

sale was in the city treasury at the time of the change in the contract. Held, that such action of the city council was not an attempted ratification of a void contract, but in effect a new contract, and was in compliance .with the provisions of article 11, sections 5 and 7 of the Constitution, and that the purpose for which said bonds were issued included the compensation due plaintiff.

**2.—Same—Misappropriation of Fund.**

Plaintiff's compensation having been provided for as required by the Constitution, he could not be deprived of his right to the fund by the use of the same in the payment of indebtedness subsequently contracted by the city, nor for the payment of debts not properly chargeable thereto.

**3.—"Board of Public Works"—Scope of Duty—Charter Construed.**

The charter of the city provided for the appointment of a "Board of Public Works" and defined their duties as follows: "They shall examine and pass upon all plans and specifications relating to such improvements, and on the bids for the work embraced therein . . . and after the completion of any such work shall examine and report whether the same has been completed according to contract, and no plans or specifications for any such work shall be adopted, bids accepted, contract awarded or work accepted for any such improvements until the report of said board in reference to said matters shall have been received by the council." Held, the duties of said board did not include the passing upon a contract for the supervision of the work, such as the one sued on; and this, although said charter required all "matters pertaining to public improvements" to be referred to said board.

**4.—Legislative Acts—Construction of.**

It is an established canon of construction of legislative acts that their intent is to be gathered from the context of the entire act, as showing its general purpose, taking particular words in the sense in which, looking to the entire act, they appear to have been used, rather than according to their accepted lexicographic definition.

**5.—Same—Letting to Lowest Bidder.**

A city charter required that all works of improvements and public works for said city, the cost of which shall exceed $500, shall be let out to the lowest bidder. Held, not intended to refer to a contract for the supervision of a work of public improvement.

**6.—Pleading—Evidence—Harmless Error.**

Under the pleading and evidence plaintiff was entitled to recover, and did in fact recover only the balance due under the terms of the contract, and, if error at all, it was harmless error to permit plaintiff to testify to the reasonable value of the services rendered.

**7.—Exclusion of Evidence—Insufficient Bill of Exception.**

Where a bill of exception to the exclusion of testimony fails to show what the testimony would have been, an assignment based thereon can not be considered.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*T. H. Stone* and *W. J. Howard,* for appellant:—The attempt upon the part of the city of Houston to employ the appellant, Alexander Potter, to supervise construction of the sanitary sewerage system in said city, constituted an attempt to create a debt against said city without, at the same time or previous thereto, making provision for levying and collecting annually a tax sufficient to provide a sinking fund of at least two percent to pay the indebtedness thereby created, and on account of such failure the same was void and inoperative.

The appellant, Potter, having contracted with the city that he was to be paid out of the fund created for the purpose of constructing the sanitary sewer system, and that fund having been legally exhausted in the construction of said sewer system, his claim against the city for compensation was limited to said fund, and he was not entitled to be paid for such services out of any other fund of the city. Constitution of Texas, art. 11, secs. 5 and 7; Howard v. Smith, 91 Texas, 15; McNeal v. Waco, 89 Texas, 83; City of Terrell v. Dessaint, 71 Texas, 770.

The matter of making the contract with appellee Potter for the supervision of the sewer system for the city of Houston, and upon which his suit is based, was a matter pertaining to public improvements involving an outlay of as much as $500, and to have made such contract valid and binding upon said city, the matter of making the same should have been referred to the board of public works of said city, and approved by it, or, upon rejection by said board, have been authorized by a two-thirds vote of the aldermen of said city, or have been authorized by the city council of said city after the expiration of fifteen days after the matter had been referred to the board of public works. Charter of the city of Houston (1897, sec. 9); see Special Laws of the 25th Leg., p. 53.

The contract with the appellee to supervise the sanitary sewer system of the city of Houston, in order to have been valid and binding upon the city, should have been let out to him on a sealed bid on competitive bidding, and he should have been the lowest bidder whom the council, in its discretion, deemed best. Charter of the city of Houston (1897), sec. 37; see Acts of the 25th Leg., p. 70.

A contract attempted to be made by a municipal corporation or its officers, in disregard and in contravention of a provision of the Constitution of the State, or a provision of its charter, is absolutely void, and is beyond the power of the city or its officers in any manner to ratify or confirm. See statements under propositions under first and second assignments of error, ante, pp. 29, 30, 32-35. Citizens' Bank v. City of Terrell, 78 Texas, 450; City of San Antonio v. French, 80 Texas, 575; Laredo v. Macdonnell, 52 Texas, 511; Beach on Pub. Corp., secs. 217, 243 and 244; Dillon on Mun. Corp., secs. 447, 457 and 463.

The city of Houston could not be bound by an implied contract to pay the appellee for the value of his services in supervising the sewer system for said city, his alleged contract being in violation of sections 5 and 7, article 11, of the Constitution, and of the provision of the charter requiring same to be referred to the board of public works, and neither knowledge upon the part of the officers of said city, that appellee was performing such services, nor the fact that the said city received the benefit of his said services, would serve to bind the said city to compensate him for the same.

The eleventh and twelfth assignments of error contain a verbatim copy of the conclusion to which they respectively refer, and each of said conclusions can be found on page number 24 of the transcript. City of Bryan v. Page, 51 Texas, 532; City of San Antonio v. French, 80 Texas, 575; Boydston v. Rockwall, 86 Texas, 234; Nichols v. State of Texas, 11 Texas Civ. App., 327; Noel v. City of San Antonio, 11 Texas Civ. App., 580.

*Brashear & Dannenbaum,* for appellee.—The contract to pay the appellee, Alexander Potter, for his services, out of a fund to be raised by the city from a sale of bonds, and which was, in fact, already realized to the extent of a sum many times greater than plaintiff's contract at the time when the contract was finally ratified by the city, was not the creation of a debt in the sense of the constitutional prohibition against creating a debt without making provision for levying and collecting a tax to pay the indebtedness. Corpus Christi v. Woessner, 58 Texas, 462; McNeal v. Waco, 89 Texas, 83; City of Houston v. Glover, 13 Texas Ct. Rep., 655.

The city having contracted with the plaintiff to pay him for his services out of a certain fund, and that fund having been afterward used by the city for purposes other than his compensation, he is entitled to be paid out of the city's other funds. McNeal v. Waco, 89 Texas, 83; Allen v. Davenport, 107 Iowa, 90; 21 Am. & Eng. Ency. of Law (2d ed.), p. 23; Beach, Pub. Corp., sec. 707.

The plaintiff having alleged, as the basis of his action, a written contract executed by authority of the defendant city, by the officer designated by its charter to sign all its contracts, and under its corporate seal, the defendant not having denied, under oath, in writing, that the same was executed by it or its authority, it will be conclusively presumed that all necessary authority was granted, and that all necessary precedent steps were taken; and the trial court having found that the written contract was duly entered into by the city, under its corporate seal, and signed by its mayor, this court should adopt said finding. Rev. Stats. of 1895, art. 1265, sec. 8; City Waterworks v. White, 61 Texas, 536; Blain & Kelley v. Pacific Exp. Co., 69 Texas, 77; Pullman Co. v. Booth, 28 S. W. Rep., 723; International & G. N. Ry. Co. v. Tisdale, 74 Texas, 8; Pioneer Sav. & Loan Co. v. Nall, 36 S. W. Rep., 322; San Antonio & A. P. Ry. Co. v. Wilson, 19 S. W. Rep., 910; San Antonio & A. P. Ry. Co. v. Harrison, 72 Texas, 478; International & G. N. Ry. Co. v. Anderson, 21 S. W. Rep., 691; Taylor Water Co. v. Kelley, 32 S. W. Rep., 436; International & G. N. Ry. v. Campbell, 1 Texas Civ. App., 509; Fisher v. Bowser, 1 Texas U. C., 346. Mayor designated by charter to sign all contracts—Gammel's Laws, vol. 10, p. 1397 (see 11). Minutes of council not the only mode of proof—Brown v. Ruse, 69 Texas, 589; Waggoner v. Wise Co., 43 S. W. Rep., 836; Bank of U. S. v. Dandridge, 12 Wheat., 67; Troy v. A. & N. Ry. Co., 13 Kan., 70; Taylor v. Henry, 2 Pick. (Mass.), 403; Dillon, Mun. Corp., sec. 300.

If the contract was not referred to the board of public works, still, the contract being executed as to the services agreed to be performed, and the city having taken and enjoyed, and still enjoying, the benefits of said services, and having power to make the contract, the defendant city would be liable upon the implied contract. San Antonio v. French, 80 Texas, 578; Denison v. Foster, 28 S. W. Rep., 1052; Penn v. City of Laredo, 26 S. W. Rep., 636; Brand v. City of San Antonio, 37 S. W. Rep., 340; San Francisco Gas Co. v. San Francisco, 9 Cal., 453; Beach, Pub. Corp., sec. 706, and cases cited in foot note on page 719.

A contract with a civil engineer for his personal services in superintending the construction of a sewerage system is not a contract of

the kind contemplated by section 37 of the charter of the city of Houston, and is not required to be let out by sealed bids. Sec. 37, Charter of Houston, 1897; Mazet v. City of Pittsburg, 20 Atl. Rep., 693; Coar v. Jersey City, 35 N. J. Law, 404; Detroit v. Hosmer, 44 N. W. Rep., 622; City of Houston v. Glover, 13 Texas Ct. Rep., 655, 656.

The original contract having been signed by the mayor, and being under the seal of the city, the burden was on the city to show a want of authority for the execution thereof, and the defendant having offered no positive evidence that the same was not executed by the city's authority, there was no error on the part of the court in presuming that all precedent steps necessary to the same were taken. Presumption that public officer has acted regularly and properly; burden to show the contrary: Shepherd v. Avery, 89 Texas, 301; Hancock v. McKinney, 7 Texas, 443; Alexander v. Houghton, 86 Texas, 704; Howard v. Perry, 7 Texas, 259; Shaver v. Tinsley, 40 S. W. Rep., 1043; Arbuckle v. State, 81 Texas, 193; Olcott v. Gabert, 86 Texas, 121; Wooters v. Hall, 61 Texas, 15; Guerra v. City of San Antonio, 1 Texas Civ. App., 422; Ysleta v. Loewenstein, 25 S. W. Rep., 444; Sadler v. Anderson, 17 Texas, 246; Sennett v. State, 17 Texas, 308.

The motion adopted by the city council on January 29, 1900, being in the following words: "That the contract executed by the mayor and sewer committee by order of the council, with Alexander Potter, for services in supervising the improvements of our sewerage system, contains the reference to the date of election held on July 11, 1899, that the mayor be authorized to alter this date in the contract to read the 9th of November, 1899," was a ratification of the contract herein offered, which had previously been executed by the mayor; and, besides this, was a recognition of the fact that authority had been given by the council before the mayor had signed the same.

The motion copied in the proposition is set out in the statement of facts. City of San Antonio v. San Antonio St. Ry. Co., 54 S. W. Rep., 284; Dillon, Mun. Corp., sec. 539; 20 Am. & Eng. Ency. of Law (2d ed.), 1180.

An exception to the exclusion of testimony which does not set out the testimony which it was expected to elicit fails to show an injury to the party excepting, and should not be considered. Redden v. Smith, 65 Texas, 26; Gulf, C. & S. F. Ry. Co. v. Locker, 78 Texas, 280; Overstreet v. Manning, 67 Texas, 664; Milliken v. Smoot, 64 Texas, 171; Cheek v. Herndon, 82 Texas, 146; Curlee v. Rose, 3 Texas Ct. Rep., 359; Farmer v. Randel, 28 S. W. Rep., 384; Hereford Cattle Co. v. Powell, 13 Texas Civ. App., 496; Lindsey v. Singletary, 43 S. W. Rep., 274.

REESE, ASSOCIATE JUSTICE.—Alexander Potter sued the city of Houston to recover $1,237.06, being balance due him for services in superintending and engineering the work of constructing a system of sanitary sewerage for the city of Houston under a written contract with the city, executed by himself, and for the city by S. H. Brashear, mayor, and the members of the sewer committee, and attested by the city secretary and the seal of the city.

By the terms of the contract the plaintiff, Potter, agreed to perform the entire work of superintending and engineering the construction of said sewerage system, and to assume the responsibility and general direction of the entire work from the time of the letting of the contract to the final completion and acceptance, not to include the construction of ordinary sewers authorized by the city council. The services to be performed by plaintiff under the contract are set out in detail. As compensation the city of Houston agreed to pay him in installments, as the work progressed, five percent upon the cost to the city of the work or material furnished by the contractors, retaining, however, $2,000 until the successful completion and installation of the entire work in running order. It was provided in the contract, which is dated September 7, 1899, that the compensation was to be paid out of the proceeds of the sale of bonds authorized by a vote of the taxpayers of said city on July 11, 1899, to be issued for the purpose of constructing a sewerage and sanitary system for said city, and if for any cause the bonds should not be realized upon in the next twelve months, the contract was to become void. This stipulation was afterwards changed under the authority of an order of the city council entered on the minutes, so as to provide that the compensation was to be paid out of the proceeds of the sale of bonds authorized to be issued by vote at an election held November 9, 1899, the change being made on February 3, 1900, for the reason that it was found that the first election, on July 11, 1899, was invalid, and another election was held on November 9, 1899, under which the bonds were issued and sold. This bond issue was for $300,000.

The cost of the work was $261,271.29, five percent of which, being plaintiff's commission or compensation, amounted to $13,063.56, of which plaintiff was paid $11,826.50, leaving a balance of $1,237.06, for which he sues.

To this petition defendant, the city of Houston, answered by general demurrer and special exceptions:

1st. That it was not alleged that, at the time of the contract, the city had no competent and qualified city engineer.

2d. That it appeared that the contract was a matter pertaining to public improvements involving an outlay of more than $500, and it was not alleged that the matter of plaintiff's employment was referred to the board of public works.

3d. That it was not alleged that the work of making said improvements had been let out by sealed bids to the lowest bidder.

Defendant further interposed a general denial, and specially pleaded that the plaintiff's compensation was to be paid out of an issue of bonds of $300,000 to pay for sanitary sewers; that the sewers had cost more than that amount, exhausting the fund, and therefore there was no liability; that the amount was more than $500, and had not been submitted to the board of public works; that plaintiff failed to comply with his contract, and defendant, on account of such failure, had been put to an expense of $1,500 in putting the sewerage system in such condition that it could be successfully operated, which was pleaded in setoff.

Defendant also pleaded the statute of limitation of four years.

The general demurrer and special exceptions were overruled, and,

upon trial before the court without a jury, there was judgment for plaintiff for the amount sued for, from which judgment defendant appeals.

The following findings of fact of the trial court, none of which are attacked in appellant's brief, are here adopted:

"On September 7, 1899, plaintiff (a sanitary civil engineer) and the city of Houston, the latter acting by its mayor and sewer committee, entered into a written contract, under the seal of said city and attested by its city secretary, whereby plaintiff agreed to supervise the engineering work in the construction of its proposed sewerage system, and the city agreed to pay him, as the work progressed, five percent upon the cost (to the city) of the work or material furnished by the contractors, but providing that the city should have the right to withhold $2,000 until the successful completion and installation of the entire work in running order, said compensation being payable out of certain bonds, which were stated in the contract to have been authorized by a vote of the taxpayers of said city on July 11, 1899, for the purpose of building said system. That afterwards said city discovered that there was a question as to the legality of the election held July 11, 1899, and the city council thereupon, on January 29, 1900, duly passed a motion stating that said contract with Potter had been entered into by authority of said council, and that the date of the election had been changed to November 9, 1899, and authorizing the mayor to accordingly alter the contract so as to state the latter date. This change was made by an addendum to the contract indorsed thereon, signed by its mayor and attested by its city secretary's signature and corporate seal. The board knew of the building of said sewerage system by said city, and that plaintiff was superintending the work, and they consulted and cooperated constantly with plaintiff, as the supervising engineer thereof during the entire time it was being built, and knew everything that was being done by him in supervising the same. That said bonds were duly sold by said city in December, 1899, and at least $100,000 of the proceeds were in the treasury before said motion of January 29, 1900, was passed, and the entire amount, $300,000, was received within twelve months from date of the original contract. That plaintiff did all the work required by the terms of said contract, and fully supervised the building of said system (except a small portion which the city decided not to build, and on which no commission was charged), and it was accepted and completed and turned over to the city, and duly installed in running order, on March 12, 1902. That the total cost to the city of the work and material furnished by the contractors was $261,271.29, which was duly paid to said contractors, thus making a commission of $13,063.56 earned by plaintiff, and that of this amount the city paid said Potter $11,826.53, leaving a balance of $1,237.03. That the fair, reasonable value of the services performed by said Potter, was the sum of five percent of the amount so paid for the work and material. The plaintiff used care, skill and diligence in the performance of his duty, and the city took and enjoyed, and is still enjoying, a valuable sewerage system, and which was accepted as satisfactory to the city. That the defendant used, for purposes other than the payment of the balance so owing to plaintiff, all of the proceeds of the sale of the bonds afore-

said, and the city's books for two years past contain an entry to credit plaintiff for amount sued for."

In propositions under the first and second assignments of error appellant attacks the judgment of the court, first: because the contract with appellee was an attempt to create a debt against the city without, at the same time, or previous thereto, making provision for levying and collecting annually a tax to pay interest and create a sinking fund; second, because appellee, having contracted with the city that he was to be paid out of the sewer bond fund, and that fund having been legally exhausted in the construction of said sewer system, he is not entitled to be paid out of the general fund; third, that the matter of the contract with appellee was not referred to the board of public works; fourth, that the work was not let out on sealed bids on competitive bidding; and fifth, that the city had had to pay more than the amount of appellee's claim on account of the work not having been properly supervised to successful completion.

As to the first objection, it appears from the findings of fact of the trial court, here adopted, that it was contemplated and provided at the time the contract was executed, as stated in the contract, that appellee's compensation was to be paid out of the proceeds of the sale of bonds which had been authorized to be issued by vote of the people at an election held July 11, 1899, the contract having been executed on September 7, 1899. Afterwards it was discovered that there was a doubt of the legality of this election, and another election was ordered and held on November 9, 1899, at which the issuance of the bonds was authorized. Thereupon the city council, by order entered upon their minutes on January 29, 1900, reciting that the contract had been entered into, and that the date of the election had been changed to November 9, authorized the mayor to change the contract so as to state the latter date, which was accordingly done on February 3, 1900. It is not contended that the bonds to the amount of $300,000, for the purpose of paying for this sanitary sewerage system (which included appellee's compensation for supervision), were not issued under the authority of this last election and sold. It is found by the court that $100,000 of the proceeds of such sale was in the city treasury at the time of this change in the contract. This action was not an attempted ratification of a contract originally void, but was such a change in the contract as to amount to the making of a new contract after provision had been properly made for payment, and was a compliance with both the letter and the spirit of the provision of article 11, sections 5 and 7, of the Constitution.

Appellant's second objection to the judgment can not be sustained, for the reason that it does not appear that the fund arising from the sale of the bonds had been legally exhausted by the payment of proper claims against it before paying appellee's claim. If, at the time the contract with appellee was made, the payment of his compensation was provided for as required by the Constitution, he could not be deprived of his right to recover by the use of the entire fund in payment of indebtedness subsequently contracted by the city to be paid out of that fund, or by payments out of that fund of indebtedness not properly chargeable against it.

The evidence shows, and the trial court found, that the work which appellee was employed to supervise cost $261,271.39, to which must be added the amount of appellee's compensation under the contract, $13,-063.56. The amount realized from the bonds was $300,000. There is no attempt made to show that the payments made out of this fund, which, it is claimed, exhausted it, were made upon contracts made before the contract with appellee. Appellee was required to see, when he made his contract, that proper provision was, or had been, made to pay his compensation as a debt against the city, in accordance with the provisions of the Constitution. He can not be deprived of his pay by the action of the city in afterwards contracting debts against the fund in excess of the amount thereof, and paying the same to the exclusion of appellee's claim, and, if it has been done, thus exhausted the fund upon which appellee had a right to rely for payment of his compensation, appellee can not, legally or justly, be made to suffer.

As to the third objection to the judgment, as set out in appellant's third proposition under the first assignment of error, that the matter was not submitted to the board of Public Works, the objection can not be sustained. Appellant relies upon the following provision of the city charter to support its contention:

"There shall be appointed by the mayor, and confirmed by the city council, three citizens of the city, who shall constitute a board of public works. They shall hold their offices for two years, and until their successors are appointed, and shall serve gratuitously. They shall be allowed, however, five hundred dollars annually, or so much thereof as may be necessary, to cover any expenses incurred in the performance of their duties. All matters pertaining to public improvements involving an outlay of as much as five hundred dollars shall be referred to said board before they are finally approved by the council; and they shall, within fifteen days thereafter, make their report thereon, and such recommendations as they may deem expedient. They shall examine and pass upon all plans and specifications relating to such improvements, and on bids for the work embraced therein; provided, that the recommendation of the board of public works, as reported to the council, shall be final, unless altered or changed by a two-thirds vote of all the aldermen; and, after the completion of any such work, shall examine and report whether the same has been completed according to contract; and no plans or specifications for any such work shall be adopted, bids accepted, contracts awarded, or work accepted for any such improvement until the report of said board in reference to said matters shall have been received by the council, or until after the expiration of fifteen days after the matter was referred to them. Said board may also originate and suggest public improvements, and prepare and recommend plans therefor, including all matters pertaining to their construction."

We are inclined to disagree with the conclusion of the trial court that these provisions are directory only, but we do not think that they apply to such contracts as the one here sued on. The meaning and intent of the particular provision is to be gathered from the entire section, and that must be construed with reference to the purpose of the provisions of the charter in question, which was to create a board which

should operate as a check upon the city council in the expenditure of public money for the erection of public improvements.

The duties of the board are thus stated: "They shall examine and pass upon all plans and specifications relating to such improvements, and on the bids for the work embraced therein, . . . and after the completion of any such work shall examine and report whether the same has been completed according to contract, and no plans or specifications for any such work shall be adopted, bids accepted, contract awarded or work accepted for any such improvements, until the report of said board in reference to said matters shall have been received by the council."

This clearly shows that the "matters pertaining to public improvements," which are required to be referred to the board of public works, are intended to embrace only such matters as are specifically referred to in the subsequent part of the same section, prescribing the duties of such board—that is, to contracts, plans and specifications for the erection of public improvements, embracing the work and material therefor, and not a subsidiary contract for the supervision of the work, such as the one sued on.

Appellant insists upon such a construction as will give controlling force to the dictionary definition of the word "pertaining." Such a rule of construction of statutes would so frequently defeat their obvious intent and purpose that it has always been an established canon of construction of legislative Acts that their intent is to be gathered from the context of the entire Act, as showing its general purpose, taking particular words in the sense in which, looking to the entire Act, they appear to have been used, rather than according to their accepted lexicographic definition.

According to such definition of the word "pertaining" as is contended for by appellant, it would be true that the contract sued on would be one pertaining to public improvements, just as a contract with an architect to furnish plans would be, or a contract of insurance of public buildings, or many other kinds of contracts having relation to public improvements, but all obviously outside of the intent of the provision of the charter referred to. There was no error in holding that the contract sued on was not required to be submitted to the board of public works.

The fourth objection to the judgment, as set out in the fourth proposition under the first assignment of error, is not tenable. The section of the charter upon which it is based provides "that all works of improvements and public works for said city of Houston, the cost of which shall exceed the sum of five hundred dollars, shall be let out by sealed bids to the lowest bidder." This was not intended to refer to a contract for the supervision of a work of public improvement. From the nature of such work it is clear that it would be impracticable to let out a contract for it on sealed bids. Even with regard to such work as manifestly comes within the terms of that portion of the section quoted, it is further provided that "work of which it is manifestly impossible to make specifications is not embraced in this requirement." This provision of the charter adds force to what has been said with regard to the requirement to submit to the board of public works. The

one provision seems to us to refer to and embrace the same kind of work as the other—that is, such work as is required to be referred to the board of public works is also required to be let out on sealed bids, and vice versa. (City of Houston v. Glover, 13 Texas Ct. Rep., 652.)

The fifth objection to the judgment, as set out in the fifth proposition under the first assignment of error, that the city of Houston had been compelled to pay more than the amount of appellee's claim on account of the work not having been properly supervised, is answered by the finding of the trial court that appellee "used care, skill and diligence in the performance of his duty," and that the work was accepted as satisfactory to the city.

We have considered all of the propositions advanced in appellant's brief under the first and second assignments, although they might all have been disregarded as not properly embraced in the first assignment, except that with regard to the failure to submit the contract to the board of public works. The second assignment, "that the court erred in not rendering judgment in favor of the defendant, and against the plaintiff," is too general, and might have properly been entirely disregarded. We have, however, considered the assignments, as the propositions thereunder seem to contain the marrow of appellant's case.

The court found, as a conclusion of law, "that the original contract was duly entered into, and was signed by the mayor, and was under the seal of the said city, and it is presumed that all necessary precedent steps were taken," which finding is assailed as erroneous. In the view we take of the case, it is not necessary to determine whether it would be presumed, from the execution of this contract, that all necessary precedent steps were taken. Our conclusion is that the evidence shows substantially that such necessary precedent steps were taken, and there is no necessity to invoke the presumption that they were, from the due execution of the contract.

The motion adopted by the city council January 29, 1900, authorizing the mayor to change the terms of the contract to meet the changed conditions arising out of the invalidity of the bond election of July 11, 1899, and the holding of another election on November 9, 1899, can not be said to be the ratification of a void contract, and therefore beyond the power of the council. In substance, the change in the terms of the contract referred to, so as to provide for the payment of plaintiff's claim out of the bonds authorized by the vote of November 9, was the making of a new contract at a time when it was fully authorized. It does not appear that any contract had been let for any of the work, or that appellee had done any work under his contract, before the change in the terms referred to.

If there was error in permitting appellee to testify, over objection, as to what would be reasonable compensation for the services rendered, such error was harmless. Appellee, under the pleadings and evidence, was entitled to recover, and by the judgment did, in fact, recover the balance due under the stipulations of the express contract, and it was immaterial what the evidence may have shown as to reasonable compensation. This also disposes of the twelfth assignment of error.

The ninth and tenth assignments of error can not be considered. The bills of exceptions referred to do not show what the witness Dormant

would have testified, if allowed to do so, in reply to appellant's inter-
rogatories, nor is the ordinance of the city, offered in evidence by ap-
pellant and excluded by the court, shown.   The court is without the
means of determining whether the evidence was admissible.

The overruling of the general demurrer is assigned as error, and
thereunder the proposition is urged that the petition should have shown
that the payment of appellee's compensation had been provided for, as
required by sections 5 and 7, article 11, of the Constitution.   The peti-
tion sets·out the contract in full, and it is sufficiently shown that ap-
pellee was to be paid out of the proceeds of the sale of bonds issued by
authority of the bond election hereinbefore referred to.   The objection
to the petition on this ground can not be sustained.

What has been said disposes of all of the assignments of error.   We
find no error in the record which requires a reversal of the judgment,
and it is therefore affirmed.

*Affirmed.*

Writ of error refused.