Argued January 26, affirmed March 8, reconsideration denied April 7, petition for review denied April 20, 1976

MONGIOVI et al, *Appellants,*

*v.*

DOERNER et al, *Respondents.*

(No. 74-1159, CA 4615)

546 P2d 1110

*William A. Babcock,* Springfield, argued the cause for appellants. With him on the briefs were Babcock, Ackerman & Hanlon, Springfield.

*Doyle L. Schiffman,* Roseburg, argued the cause and filed the brief for respondents. On the brief was Doug B. Gordon, Portland, for respondents Wolff, Zimmer, Gunsul & Frasca, dba Wolff, Zimmer, Gunsul and Frasca.

Before Schwab, Chief Judge, and Foley and Lee, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

The issues are: (1) what is a "new courthouse"; and (2) whether the hiring of professionals, such as architects, in connection with a public construction project is subject to statutory bidding and bonding requirements.

ORS 276.212 et seq establish elaborate procedures to be followed before a county can construct a "new courthouse." Detailed published notice is required, ORS 276.712(2), 276.714, 276.716; a public hearing is required, ORS 276.718, 276.720; and various issues concerning the proposed courthouse must be submitted to a vote of the people if requested by only two percent of the voters, ORS 276.720, 276.722.[1] However, ORS 276.730(1)(b) provides that these elaborate procedures "do not apply to * * * [a]dditions to county courthouses, such as jails, vaults, additional offices, etc."

Douglas County is constructing or has constructed a Justice Building as an annex to its county courthouse. In so doing, the county has not complied with ORS 276.712 et seq. In this declaratory judgment proceeding, plaintiffs contend that the Justice Building is a "new courthouse," and the county erred in not complying with the various statutory prerequisites. The trial court held the Justice Building was an addition to a courthouse and thus exempt from the requirements of ORS 276.712 et seq. On de novo review, we reach the same conclusion.

■ The Justice Building is immediately adjacent to and connected with the existing Douglas County Cour-

---

[1] The authority of the state to regulate the local issue of the construction and location of a courthouse in such detail is not at all clear. The above-described statutory scheme has been in effect since 1923, Oregon Laws 1923, ch 93, p 131, but has not previously been before an Oregon appellate court. This statutory scheme is at least arguably inconsistent with ORS 203.035, which grants counties full authority "over matters of county concern." Although it is difficult to perceive anything other than a county concern in the construction and location of its governmental buildings, no question is raised in this case about the possible effect of ORS 203.035.

thouse, which will continue to be used for county offices, and which will serve as the entrance to the entire complex. The courthouse and Justice Building are connected and integrated so that, once inside the main entrance of the courthouse, one has access to all areas of the complex without going outside. As explained by one of the architects:

> "* * * [T]he front door of the courthouse will still be the front door of the courthouse. When you walk in there it will be more open and you will have access, obvious access through the existing building * * * into the * * * corridor system of the new addition * * *."

It is not completely clear which county offices will remain in the existing courthouse and which will be located in the Justice Building. It is clear that the county jail will be in the Justice Building; apparently all or most of the courtrooms used by the circuit and district courts will also be in the Justice Building.

Although connected by a passageway, the existing courthouse and the Justice Building do not share a common wall. The existing courthouse and the Justice Building each consist of about 150,000 square feet.

As originally enacted, what is now ORS 276.712 et seq applied in part to replacing a courthouse "destroyed by fire or other natural causes." Oregon Laws 1923, ch 93, p 131. That is obviously the construction of a "new courthouse." At the other end of the spectrum, ORS 276.730(1)(b) tells us that installing "vaults" constitutes an "addition" to a courthouse, not a "new courthouse." On the continuum between replacing a destroyed courthouse and installing vaults, where the line is to be drawn between a "new courthouse" and an "addition" is probably impossible to articulate. Suffice it to say, the above facts lead us to the conclusion that the Douglas County Justice Building is more in the nature of an addition to an existing courthouse.

We do not deem it significant that all or most of the courtrooms will be located in the addition. Regardless

of the dictionary definition of courthouse, ORS 276.712 et seq makes little sense if only addressed to the location of courtrooms; instead, the statutory scheme has to be addressed to the broader concern of the location of the headquarters of county government, which in Oregon usually means the county courthouse. Nor, contrary to plaintiffs' urging, do we deem it significant that the existing courthouse and the Justice Building do not share a common wall. This suggested litmus paper test to distinguish between a "new courthouse" and an "addition" has the appeal of simplicity; it does not have the appeal of rationality.

■ Plaintiffs' second major contention concerns the county's admitted failure to follow statutory requirements for public advertising, competitive bidding and bonding in retaining architects and other professionals to work on the Justice Building project.

General requirements are stated in ORS 279.612 to 279.620 for advertising for bids, ORS 279.616, written competitive bidding, ORS 279.618, 279.620(1), and a performance bond, ORS 279.620(2)(b). Similar requirements are stated in ORS 169.020 for contracts to construct a county jail. These statutes apply to contracts "for any public works, or the purchase of any supplies or materials, or for work to be performed," ORS 279.612(1), and to "the performance of the whole or any part of the work [construction of a jail], or for furnishing materials," ORS 169.020. Plaintiffs' contention raises the question of whether this statutory language applies to contracts for professional services. The trial court held that it does not. We agree.

There are three contracts here in question. SUA, Inc., contracted with Douglas County to provide space analysis recommendations, project planning and coordination of design in connection with the construction of the addition to the courthouse. Prior to the actual building program, SUA, Inc., had been retained by the county to make long-range projections of the facility requirements of the Douglas County government.

SUA, Inc., provides services relating to governmental records management and interior planning and design of governmental buildings.

The architectural firm of Wolff, Zimmer, Gunsul and Frasca was retained by Douglas County to design and partially supervise the construction of the courthouse addition.

Mr. John Todd was retained by Douglas County as construction manager, a position necessary because there was no general contractor under the construction method used (called "fast track"). As one witness explained:

> "Well, it's not feasible to build on a fast track schedule without a construction manager because by definition under fast track you are not putting out a general contract for the works, and there's nobody who is going to coordinate all of the work, that is, there is no general contractor who is responsible for all of the work under fast track because you put out the frame, you may put out the excavation separately, you put out the curtain wall or the exterior walls of the building, you put out one or more contracts for the interior finishes of the building, you put out a contract for the mechanical aspects of the building, the electrical aspects of the building, and all of these go out as separate contractors — separate contracts many of them at different times, and there's nobody except a construction manager who could tie that package together, so fast track approach is not feasible without a construction manager there."

The construction manager "tied the package together" by coordinating the solicitation and acceptance of bids for various parts on the construction project, and by sharing with the architects general supervisory authority over the work performed.

Neither SUA, Inc., nor the architects, nor Mr. Todd performed any of the construction work on the courthouse addition or supplied any materials. All were parties to personal service contracts whereby the county was purchasing professional services involving peculiar skills, knowledge and expertise. All were

selected on the basis of their qualifications and prior experience.

Although we find no Oregon cases on point, courts in other jurisdictions have almost unanimously held that statutes requiring competitive bidding for public works contracts are not intended to apply to professional service contracts like those here in question. Annotation, 15 ALR3d 733 (1967); 64 Am Jur2d 896, Public Works and Contracts § 43; 34 Op Att'y Gen 59 (1968). The rationale is that since construction materials and work must conform to specifications, ORS 279.616(1), and performance can be measured by a relatively objective standard, the legislature intended the lowest price to be the ultimate determining factor in making such contracts. But when making a contract involving professional or esthetic judgment, the legislature could not have intended lowest price to be the ultimate determining factor. Likewise, since performance of a contract involving esthetic judgment cannot be measured objectively, it would not be reasonable to require an architect to post a performance bond. The weight of authority and its rationale lead us to hold that the three contracts in question are exempt from the statutory bidding and bonding requirements.

Affirmed.