McMASTER CONSTRUCTION, INC., a corp.; Lippert Bros., Inc., a corp.; Utility & Environmental Constructors, Inc., a corp.; L.F. Downey Construction, Inc., a corp.; Buckner & Moore, Inc., a corp.; Lambrecht Construction, Inc., a corp.; Terra Construction, Inc., a corp.; and Wynn Construction Co., Inc., a corp., Appellants,

v.

BOARD OF REGENTS OF OKLAHOMA COLLEGES, a Constitutional Board; Gene Nelson, Belva Howard, Wayne Sallsbury, Leonard Wilkins, Tracy Kelly, Paul Barby, Joe Paul Hemphill, Mike Brown and Sandy Garrett, all members of the Board of Regents of Oklahoma Colleges; University of Central Oklahoma, an Oklahoma institution of Higher Education; George Nigh, President and Chief Administrative Officer of the University of Central Oklahoma; Flintco, Inc., a corp.; and Sverdrup Facilities, Inc., a corp., Appellees.

No. 86856.

Supreme Court of Oklahoma.

March 4, 1997.

John B. Hayes, Looney Nichols Johnson & Hayes, Oklahoma City, for Appellants.

Drew Edmondson, Attorney General of Oklahoma, Ross Johnson, Guy L. Hurst, Oklahoma City, for Appellees Board of Regents, Members of the Board, University of Central Oklahoma, and George Nigh.

Sheridan A. McCaffree, Board of Regents of Oklahoma Colleges, Oklahoma City, C. Max Speegle, Edmond, for Appellees University of Central Oklahoma and George Nigh.

Drew Neville, Russell Cook, Deborah A. Wolfe, Linn & Neville, Oklahoma City, for Appellee, Sverdrup Facilities, Inc.

Clyde A. Muchmore, Robert G. McCampbell, Crowe & Dunlevy, P.C., Oklahoma City, for Appellee, Flintco Inc.

HODGES, Justice.

The threshold issue in this appeal is whether the management construction contracts entered into by the University of Central Oklahoma (UCO) and defendants Flintco and Sverdrup Facilities (construction management companies) are subject to the com-

petitive bidding procedures as set forth in the Oklahoma Public Bidding Act (Act).[1]

## I. Facts

In 1992, the people of Oklahoma authorized a bond issue for capital improvements to UCO. The Board of Regents of Oklahoma Colleges (Regents) approved UCO's plan to utilize construction managers[2] for the improvements rather than utilizing a general contractor.[3] UCO, by newspaper advertisements, solicited proposals for construction management services.

UCO received seven proposals, including ones from plaintiffs Lippert Bros. and Wynn Construction Company and defendants Flintco and Sverdrup Facilities. After several companies made presentations, the Regents voted to contract with Flintco and Sverdrup to provide construction management services. On January 10, 1995, UCO entered into a contract with Sverdrup Facilities. Then on February 17, 1995, UCO entered into a contract with Flintco.

The construction management contracts of Sverdrup and Flintco are similar.[4] Summarily, Sverdrup and Flintco were required to develop detailed schedules and cost analysis, assist in soliciting and awarding bids, and supervise and coordinate the contractors and delivery of materials. Although some of the duties specified in the contracts have traditionally been performed by a general contractor, unlike a general contractor, neither Sverdrup or Flintco actually construct any part of the building, subcontract for the actual construction, or supply any of the material. Neither company guarantees maximum fixed costs of the projects, and neither company reaps the benefits of cost-cutting measures on the projects. The construction management companies act more as agents on behalf of UCO than would a general contractor.[5]

The plaintiffs initiated this suit by filing a petition in the district court on May 19, 1995, asking for a declaration that the contacts are void, for an injunction prohibiting further performance and payment under the contracts, and a writ of mandamus requiring UCO to comply with the requirements of the Oklahoma Competitive Bidding Act (Act).[6] The district court, without discussion, granted summary judgment in favor of the defendants.

The plaintiffs filed this appeal arguing the contracts are void for the following reasons: (1) the construction management contracts are subject to Oklahoma Competitive Bidding Act because they are contracts for the purpose of making a public improvement or constructing a public building, and the Act was not followed; (2) the contracts require the companies to perform architectural and engineering services without being licensed; and (3) if the management contracts are not subject to Oklahoma's Public Bidding Act, then the management companies are consultants within the meaning of and subject to

1. Okla.Stat. tit. 61, §§ 101–33 (1991).

2. "The construction management technology centers on utilization of a construction manager who coordinates and manages the building process." *Attlin Construction, Inc. v. Muncie Community Schools*, 413 N.E.2d 281, 285 n. 3 (Ct. App.Ind.1980).

3. A general contractor employees the construction crew or subcontracts the actually construction and purchases the materials.

4. Both contracts require the companies to, among other things, (1) develop a project time schedule and update it as necessary, (2) review design documents and make recommendations to the architect, (3) make recommendations to UCO regarding the construction project, (4) assist UCO in soliciting and awarding bids and ascertaining that the contractors carry the proper insurance, (5) coordinate the contractor's work and delivery of materials, (6) schedule and conduct meetings to inform UCO of the progress, problems, and scheduling, (7) coordinate meetings between the architect and the contractors, (8) inspect the contractor's work and make recommendations for payment to the contractors, (9) assist in obtaining permits, (10) assist in the testing and start up of all utilities and equipment, (11) obtain from the contractors adequate instructions for maintenance and operation of equipment, and (12) generally assist in the transfer of the construction to UCO.

5. *Krohnberg v. Pass*, 187 Minn. 73, 244 N.W. 329 (1932).

6. Okla.Stat. tit. 61, §§ 101–33 (1991). Oklahoma's Competitive Bidding Act requires public agency award construction contracts for more than $7,500.00 to the lowest responsible bidder. *Id.* at §§ 102, 103.

the State Consultants Act,[7] and UCO failed to follow the procedures set out therein. The Court of Civil Appeals affirmed the trial court's judgment finding that the plaintiffs had failed to bring the suit within the ten day period prescribed by the section 122 of the Act.[8] This Court granted certiorari.

## II. The Oklahoma Competitive Bidding Act

■ Absent a constitutional, statutory, or regulatory restraint, Oklahoma's public entities are free to contract for construction services without soliciting bids.[9] The Oklahoma Competitive Bidding Act acts as a restraint on public agencies. The Act requires all public construction contracts as defined in the Act to be competitively bid.[10] A public construction contract is a contract which exceeds $7,500 and is awarded "for the purpose of making any public improvements or constructing any public building or making repairs to the same."[11] UCO argues the construction management contracts are not encompassed within this definition.

■ The purpose of the Act is to "obtain the best results at the lowest cost, the greatest value for the fewest dollars."[12] Competitive bidding statutes are to be construed to give effect to the apparent legislative policy.[13]

The Act is intended to require a contract to be awarded to the lowest bidder when work or materials must conform to specifications so that accurate comparisons can be objectively made.[14] When a contract involves professional judgment or scientific knowledge, the legislature does not require the lowest price to be the determining factor.[15] A contract for personal services, such as services of architects, engineers, and surveyors, is not subject to competitive bidding statutes because the services are not subject to uniform specifications.[16] Because the Flintco and Sverdrup contracts are for a personal service and call for professional judgment, they are not subject to the Act.

■ In *Carpet City, Inc. v. Stillwater Municipal Hospital Authority,*[17] this Court defined construction to mean "to put together the materials and constituent parts used [in a building] in their proper place and order."[18] Under this definition, only those contracts where the contracting party is supplied with materials or labor are subject to the Oklahoma Competitive Bidding Act. Contracts for services for professional expertise are not subject to the Act. In the case of the construction management contracts, the management companies do not put together any of constituent parts or supply any of the

7. Okla.Stat. tit. 61, §§ 60–65 (1991).

8. Section 122 of title 61 of the Oklahoma Statutes provides:

> Any taxpayer of the State of Oklahoma, or any bona fide unsuccessful bidder on a particular public construction contract, with ten (10) days after any such contract has been executed, is empowered to bring suit in the district court of the county where the work, or the major part of it, is to be done to enjoin the performance of such contract if entered into in violation of the provisions of this act.

9. *Independent Ins. Agents of Okla., Inc. v. Oklahoma Turnpike Auth.,* 876 P.2d 675, 679 (Okla. 1994); *Cimarron Utilities Co. v. City of Guymon,* 171 Okla. 344, 43 P.2d 143 (1935); 64 Am.Jur.2d *Public Works and Contracts* § 34 (1972).

10. Okla.Stat. tit. 61, § 103 ( 1991), provides:

> All public construction contracts shall be let and awarded to the lowest responsible bidder, by free and open competitive bidding after solicitation for sealed bids, in accordance with the provision of this Act.

11. *Id.* at § 102(4).

12. *Independent Ins. Agents v. Oklahoma Turnpike Auth.,* 876 P.2d 675, 679 (1994); 64 Am.Jur.2d *Public Works and Contracts* § 37 (1972).

13. *Mongiovi v. Doerner,* 24 Or.App. 639, 546 P.2d 1110, 1113 (1976).

14. *Id.*

15. *Weathers v. Layton,* 104 Okla. 14, 230 P. 750 (1924).

16. *Id.*; 64 Am.Jur.2d *Public Works and Contracts* § 43 (1972).

17. 536 P.2d 335, 338 (Okla.1975).

18. The plaintiffs argue that for the purposes of the Oklahoma Public Bidding Act, the Public Building Construction and Planning Act's definition of construction should apply. *See* Okla.Stat. tit. 61, § 202 (1991). We reject this position because section 202 specifically limits the definitions contained therein to the Public Building Construction and Planning Act. *Id.*

materials. Rather, the companies act as personal representatives of UCO by providing services which require expertise in coordinating and managing the building process. When a construction management company acts solely in this capacity, it is not performing construction as defined by Oklahoma competitive bidding statutes.[19]

The overwhelming majority of jurisdictions which have addressed the issue have concluded that construction management contracts which do not call for the furnishing of equipment, building labor or materials are not subject to competitive bidding statutes.[20] Plaintiffs argue that the competitive bidding statutes of these jurisdictions are sufficiently different from Oklahoma's competitive bidding act that these cases should not be followed. After reviewing the cases and the applicable statutes, we find any differences in the statutes are inconsequential.[21]

### III. The Public Building Construction and Planning Act or the State Consultants Act

■ Neither the Public Building Construction and Planning Act[22] (Planning Act) or the State Consultants Act[23] applies to the construction management contracts at issue in this case. Under sections 204(B)(2), 206.1, and 207.2(B)(8) of the Planning Act, the Board of Regents is exempt from the Planning Act's substantive provisions. Thus, the Planning Act does not impact UCO so far as the plaintiffs' arguments are concerned.

■ Initially, the plaintiffs conceded that the State Consultants Act does not apply. Plaintiffs have changed their position and now argue if the Oklahoma Public Competitive Bidding Act does not apply, then the State Consultant Act applies and has not been followed. Pursuant to sections 60 and 61 of the State Consultant Act, it applies only to licensed architectural, registered engineering, and registered land surveying services. Because the construction management contracts do not fall within any of these categories, they do not come within the purview of the State Consultant Act.

### IV. Unlicensed Practice of Architecture and Engineering

■ Plaintiffs argue that the contracts require the construction management compa-

---

**19.** *See Weathers v. Layton & Forsyth,* 104 Okla. 14, 230 P. 750, 752 (1924).

**20.** *D–1 Constructors, Ltd., v. Unified School District No. 229,* 14 Kan.App.2d 245, 788 P.2d 289 (1990); *State of Indiana v. Brown,* 422 N.E.2d 1254 (Ind.Ct.App.1981); *Attlin Construction, Inc. v. Muncie Community Schools,* 413 N.E.2d 281 (Ind.Ct.App.1980); *Krohnberg v. Pass,* 187 Minn. 73, 244 N.W. 329 (1932); *Malloy v. Boyertown Area School Board,* 540 Pa. 308, 657 A.2d 915 (1995); *Mongiovi v. Doerner,* 24 Or.App. 639, 546 P.2d 1110 (1976); *Gulf Bitulithic Co. v. Nueces County,* 11 S.W.2d 305 (Tex.Ct.App.1928); *City of Houston v. Potter,* 41 Tex.Civ.App. 381, 91 S.W. 389 (1906); 15 A.L.R.3d 733, 745–46 (1976).

**21.** The plaintiffs cite *City of Inglewood–Los Angeles County Civic Center Authority v. Superior Court of Los Angeles County,* 7 Cal.3d 861, 103 Cal.Rptr. 689, 500 P.2d 601 (1972), *Achen–Gardner, Inc. v. Superior Court of the State of Arizona, In and For the County of Maricopa,* 173 Ariz. 48, 839 P.2d 1093 (1992); *City of Colorado Springs v. Coray,* 25 Colo.App. 460, 139 P. 1031 (1914), that construction management contracts are subject to competitive bidding statutes. The cases of *Inglewood* and *Achen–Gardner* are easily distinguished.

In *Inglewood,* the company employed to oversee the construction also guaranteed the price.

The court reasoned that "the management contracting procedure as proposed and followed [in *Inglewood* was] too closely akin to traditional lump sum general construction contracting to be held exempt from the statutory competitive bidding requirements."

In *Achen–Gardner,* the City of Chandler was attempting to completely avoid the competitive bidding process by having a private developer make public improvements and be reimbursed from public funds. The agreement called for the developer to construct an additional lane on two roads, install a traffic signal, landscape, reconstruct a cul-de-sac, and construct street lights. Further the developer was to perform the work itself. The developer was not acting as a representative of the City in the capacity of a construction manager but as a general contractor responsible for the furnishing or procuring the work and materials.

Plaintiffs reliance on *City of Colorado Springs,* a decision of the Colorado Court of Appeals, would appear to be misplaced. In *McNichols v. City and County of Denver,* the Colorado Supreme Court stated that a contract involving professional or skilled services would not be subject to the statutory competitive bidding requirements.

**22.** Okla.Stat. tit. 61, §§ 201–211 (1991).

**23.** *Id.* at §§ 60–65.

nies to practice architecture and engineering without a license. For a service to constitute the practice of engineering, the service must require "engineering education, training and experience in the application of special knowledge of the mathematical, physical and engineering sciences...." [24] Similarly, for a service to constitute the practice of architecture, the service must require "architectural education, training and experience...." [25] Merely because a service could be performed by an architect or engineer does not mean that one must be licensed to perform the service. As pointed out by the plaintiffs, many of the services performed by the companies are generally performed by a general contractor. To accept plaintiffs' argument would mean that all general contractors are engaged in the unlicensed practice of architecture and engineering. We cannot agree that the services required in the construction management contracts constitute the practice of architecture or engineering.[26]

### IV. Conclusion

The Board of Regents and UCO did not violate the Oklahoma Public Competitive Bidding Act, the Public Building Construction and Planning Act, or the State Consultants Act in letting the construction management contracts with Flintco and Sverdrup. Because we find the contracts do not fall within the confines of Oklahoma Public Competitive Bidding Act, we need not address whether the plaintiffs complied with title 61, section 122 of the Oklahoma Statutes. Further, the services called for by the contracts do not call for the unlicensed practice of architecture or engineering.

The Court of Civil Appeals' opinion is vacated. The judgment of the district court is affirmed.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF TRIAL COURT AFFIRMED.

**24.** Okla.Stat. tit. 59, § 475.2(4) (1991).

**25.** *Id.* § 46.3(A)(1) & (B).

SUMMERS, V.C.J., and LAVENDER, SIMMS, HARGRAVE, WILSON and WATT, JJ., concur.

OPALA, J., dissents.

**26.** Both the Association of American Architects and the Associated General Contractors of America recognize the concept of construction management and have developed form contracts.