2016 OK CIV APP 67

**ARK WRECKING COMPANY OF OKLAHOMA, INC.,** Plaintiff/Appellant,

v.

**VARGAS CONSTRUCTION COMPANY, INC., Defendant and Third–Party Plaintiff,**

v.

**Independent School District Number One of Tulsa County, Oklahoma, aka Tulsa Public Schools, Defendant and Third–Party Defendant/Appellee.**

**Case No. 114,163**

THIS OPINION HAS BEEN RELEASED FOR PUBLICATION BY ORDER OF THE COURT OF CIVIL APPEALS, Division No. 3

Court of Civil Appeals of Oklahoma, Division No. 3.

FILED FEBRUARY 5, 2016

Mandate Issued: 10/26/2016

Gerald Stamper, John E. Harper, Caitlin Jane Murphy, Tulsa, Oklahoma, for Appellant,

Douglas J. Mann, Kent B. Rainey, Tulsa, Oklahoma, for Appellee, Tulsa Public Schools.

Opinion by Larry Joplin, Judge:

¶1 Plaintiff/Appellant, Ark Wrecking Co., seeks review of the trial court's order granting the cross-motion for summary judgment of Defendant/Third–Party Defendant, Independent School District No. 1, Tulsa County, Oklahoma (Tulsa Public Schools or TPS). Ark Wrecking/Appellant sought summary judgment against Defendants, Vargas Construction Co. and Tulsa Public Schools, arguing that under Oklahoma's Little Miller Act (61 O.S. 2001 § 1) payment and performance bonds should have been posted by the general contractor, Vargas, to protect subcontractors from nonpayment. Tulsa Public Schools filed a combined response and cross-motion for summary judgment, asserting Vargas was a construction manager of the school renovation project, not a general contractor, and as such was not required to post bonds under the authority provided in *McMaster Constr. v. Bd. of Regents of Oklahoma Colleges*, 1997 OK 21, 934 P.2d 335.

¶2 Vargas Construction and Tulsa Public Schools entered into a construction management agreement on June 20, 2011. Section 8.1 of the construction management contract provided, "[t]he Construction Manager shall not be required to furnish bonds covering performance of the Contract and payment of obligations arising thereunder except as required by the Act on portions of the Work which the Construction Manager self perform (sic)." The construction management contract also provided for a guaranteed maximum price and to the extent the cost of the work exceeded the guaranteed maximum price, the construction manager (Vargas) shall bear the costs in excess of the guaranteed price. The construction management contract gave Vargas the right to self-perform any of the work required for the project, and in such an event, Vargas was to be treated as any other bidder, including being subject to the Competitive Bidding Act, 61 O.S. §§ 101 et seq.

¶3 On December 2, 2012, Tulsa Public Schools and Ark Wrecking entered into a $149,000 contract for demolition work for what was known as the Eisenhower Project. The TPS–Ark contract contained an acknowledgment the contract "has been or will be assigned to Vargas Construction Company, the Projects (sic) Construction Manager[.]" About two weeks after entering into the contract, December 17, 2012, the TPS–Ark contract was assigned to Vargas. The Executive Director of Bond Projects and Energy Management for Tulsa Public Schools signed an affidavit attesting that the school district paid to Vargas the $149,000 provided for in the demolition contract. Ark asserts Vargas has not paid those funds to Ark for the demolition work it performed and that Vargas is no longer financially viable, and therefore judgment proof. Vargas argued the demolition work was not performed properly and funds were needed to correct problems caused by Ark's performance of the demolition.

¶4 Ark's motion for summary judgment argued the *McMaster* case does not create an exception to the requirements of the Little Miller Act and Vargas was required to post a payment and performance bond. Ark asserts Vargas' failure to post the required bond and the school's refusal to make Vargas do so, circumvented public policy, harming the subcontractors that were intended to be protected by the bond requirements.

¶5 The trial court granted Tulsa Public School's cross-motion for summary judgment and denied the motion for summary judgment of Ark Wrecking by order on July 2, 2015. In the order, the trial court found Tulsa Public Schools did not impermissibly waive any statutory bond requirements. Second, the court found Tulsa Public School's assignment of the contract to Vargas was valid and enforceable. Third, the court said Ark had abandoned all its claims against Vargas, except for a single declaratory judgment claim; and having found the assignment of the con-

tract was enforceable, the court found the declaratory judgment claim must be resolved in favor of Vargas. Finally, the court determined the only remaining claims were those of Vargas and Tulsa Public Schools that were brought in the third-party petition and the answer to the third-party petition, but Vargas and TPS filed a joint dismissal without prejudice, and these claims were deemed dismissed.

¶ 6 In its motion for summary judgment, Ark argued Oklahoma's Little Miller Act, 61 O.S. § 1 et seq., requires payment and performance bonds be posted by a general contractor on all contracts exceeding $50,000, involving the construction or repair of a public building on public property.[1] TPS argued Vargas was not a contractor, but instead a construction manager, so that Vargas was not subject to the Competitive Bidding Act and was not required to post a payment or performance bond. *McMaster Constr., Inc. v. Bd. of Regents of Oklahoma Colleges*, 1997 OK 21, 1997 OK 23, 934 P.2d 335.

¶ 7 The *McMaster* court found that the two construction manager contracts at issue were not subject to the Competitive Bidding Act. In deciding the construction managers were not like general contractors, the *McMaster* court said the following:

> In the case of the construction management contracts, the management companies do not put together any of [the] constituent parts or supply any of the materials. Rather, the companies act as personal representatives of [the university] by providing services which require expertise in coordinating and managing the building process. When a construction management company acts *solely* in this capacity, it is not performing construction

as defined by Oklahoma competitive bidding statutes.

*McMaster*, 934 P.2d at 338–39 (emphasis added).

¶ 8 The *McMaster* court explained the construction managers developed detailed schedules, costs analysis, assisted in soliciting and awarding bids and supervised and coordinated the contractors and delivery of materials. *Id.* at 337. However, the court found the construction managers did not do any of the following: the managers did not "actually construct any part of the building"; they did not subcontract for the actual construction or supply any of the material for the construction; nor did either construction manager guarantee maximum fixed costs or reap any benefit of cost-cutting measures for the projects. *Id.* Due to the limited role of the construction managers, the *McMaster* court found they were more like agents of the university and not general contractors.

¶ 9 Ark argued the assignment of the contract by TPS to Vargas was invalid, because the bonding requirements of the Little Miller Act cannot be waived, citing *Carpet City, Inc. v. Stillwater Mun. Hosp. Auth.*, 1975 OK 75, 536 P.2d 335, 339. TPS argued the assignment was valid because Vargas did not perform construction work with respect to the demolition and therefore was not required to post a bond.

¶ 10 In the alternative TPS argued, even assuming for the sake of argument that Vargas was required to post a payment or performance bond, Ark is still not entitled to seek any payment from TPS, because Ark cannot look to the public entity for payment of damages. *Haskell Lemon Const. v. Indep. School Dist. No. 12 of Edmond*, 1979 OK 5,

---

1.  61 O.S. Supp.2006 § 1(A)–(B):

A.  Prior to an award of a contract exceeding Fifty Thousand Dollars ($50,000.00) for construction or repair of a public or private building, structure, or improvement on public real property, the person that receives the award shall:
1.  Furnish a bond with good and sufficient sureties payable to the state in a sum not less than the total sum of the contract; or
2.  Cause an irrevocable letter of credit, containing terms the Office of Management and Enterprise Services prescribes, to be issued for the benefit of the state by a financial institution in-

sured by the Federal Deposit Insurance Corporation in a sum not less than the total sum of the contract.
B.  The bond or irrevocable letter of credit shall ensure the proper and prompt completion of the work in accordance with the contract and shall ensure that the contractor shall pay all indebtedness the contractor incurs for the contractor's subcontractors and all suppliers of labor, material, rental of machinery or equipment, and repair of and parts for equipment the contract requires the contractor to furnish.

589 P.2d 677, *overruled on other grounds by Boren v. Thompson & Assoc.*, 2000 OK 3, 999 P.2d 438 (court found the cause of the contractor's damages was the contractor's failure to ascertain whether the statutory bond had been given prior to furnishing the construction materials).[2] "While failure to strictly comply with the Public Competitive Bidding Act may result in certain adverse consequences for a public agency, there is not numbered among them liability for the losses of materialmen and laborers." *Haskell Lemon Const.*, 589 P.2d at 680. This protection for the public entity was affirmed in *Boren*, 2000 OK 3, ¶ 24, 999 P.2d at 447.

¶ 11 With respect to Ark's first argument, the record available is not sufficient to determine as a matter of law whether Vargas fits within or outside of the limited parameters of a construction manager, as the role was articulated in *McMaster*. The record facts are not such that a court can determine as a matter of law that Vargas acted "solely" in a capacity of "coordinating and managing the building process" for TPS. *McMaster*, 934 P.2d at 338–39. TPS claims Vargas was not a contractor, at least with respect to demolition, and Ark asserts Vargas not only guaranteed fixed costs for TPS, but engaged as a contractor in the construction process. For its part, the record provides no clear understanding of the contractor duties, if any, undertaken by Vargas. The facts surrounding what role Vargas played would need to be further developed in order to apply the *McMaster* analysis in this case.

■ ¶ 12 However, we find TPS's alternative argument persuasive, namely that Ark cannot look to the public entity for payment of damages. *Boren* states "the fundamental objective of the bond statutes is twofold—[1] protecting laborers and materialmen on public construction projects who have no lien rights against public land or improvements, and [2] saving the public from *all* liability for liens for material and labor furnished on public improvements." *Boren*, 2000 OK 3, ¶ 16, 999 P.2d at 444 (emphasis added). *Boren* "reiterate[d] that a subcontractor is charged with knowledge of the statutory duty of the contractor to provide a bond" and that the jury may consider the subcontractor's neglect in failing to personally verify whether a payment bond has been secured. *Id.* at ¶ 24. *Boren's* response to the statutes' objectives supports *Haskell Lemon's* holding that "[w]hile failure to strictly comply with the Public Competitive Bidding Act may result in certain adverse consequences for a public agency, there is not numbered among them liability for the losses of materialmen and laborers." *Id.* at 680. Based on the authority provided by the Oklahoma Supreme Court in *Haskell Lemon* and reiterated in *Boren*, we do not find error in the trial court's grant of summary judgment to Tulsa Public Schools.

■ ¶ 13 In addition, Ark has failed to provide persuasive authority for its proposition that TPS cannot assign the contract to Vargas, because the contract allegedly violated 61 O.S. § 1. Neither *Boren* nor *Haskell Lemon*, both cited by Ark in support of this proposition, provide authority that would abrogate the TPS–Vargas contract assignment. Ark also cites *Carpet City, Inc. v. Stillwater Mun. Hosp. Auth.*, 1975 OK 75, 536 P.2d 335 in support of this proposition. *Carpet City* states that the bond and insurance requirements of 61 O.S. Supp.1974 § 113(B) could not be waived, where accepting a previously rejected bid had failed to comply with the Competitive Bidding Act. *Carpet City*, 536 P.2d at 338. The Oklahoma Supreme Court then granted relief in the form of a writ of mandamus to prevent delay in the building of the public hospital. *Id.* at 339. However, no-

---

**2.** To the extent that the bond statutes protect public entities and do not expressly impose liability on public entities or their officers, we affirm the teachings of *Haskell* and its progeny. We reiterate that a subcontractor is charged with knowledge of the statutory duty of the contractor to provide a bond. We agree that a jury may consider the subcontractors neglect in failing to personally verify whether a payment bond has been secured. Nevertheless, a subcontractor should not be precluded in all circumstances from asserting a claim against an entity such as the firm solely because it did not request a copy of the bond. To the extent *Haskell* and its predecessors are inconsistent with this opinion, they are overruled. Under the facts presented, the architectural firm's motion to dismiss was properly denied.

*Boren*, 2000 OK 3, ¶ 24, 999 P.2d at 447.

where in *Carpet City* does the court address the issue of assigning a contract or abrogating the assignment of a contract as a remedy for a subcontractor who was not paid.

¶ 14 The trial court noted that upon filing its first amended petition, Ark maintained only a single declaratory judgment claim against Vargas, asking the court to declare the contract assignment invalid. As a result, Ark has preserved no similar contract or *quantum meruit* claims against Vargas as it had pursued against TPS. And the July 2, 2015 filing of the joint dismissal by TPS and Vargas disposed of the remaining claims.

¶ 15 For the reasons herein stated, the trial court's granting of TPS's cross-motion for summary judgment is AFFIRMED.

BELL, P.J., and HETHERINGTON, J., concur.